Ralph J. HENNING, Appellant,

v.

UNITED STATES of America.

No. 19088.

United States Court of Appeals,
Third Circuit.

Argued March 18, 1971.

Decided July 13, 1971.

Jerome R. Verlin, Dragon, Verlin & Galfand, Philadelphia, Pa., (N. Carl Schwartz, Philadelphia, Pa., on the brief), for appellant.

James C. Hair, Jr., Atty., Dept. of Justice, Washington, D. C. (William D. Ruckelshaus, Asst. Atty. Gen., Louis C. Bechtle, U. S. Atty., Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS and KALODNER, Circuit Judges and WHIPPLE, District Judge.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

Appellant, Henning brought this suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. to recover damages for:

"(a) causing the plaintiff to contract the disease of tuberculosis;

"(b) failing to discover that plaintiff had contracted the disease of tuberculosis both before and after discharge;

"(c) failing to properly administer x-rays both before and after discharge;

"(d) failing to maintain testing equipment in proper condition both before and after discharge;

"(e) failing to properly analyze the x-rays both before and after discharge;

"(f) failing to select competent personnel both before and after discharge;

"(g) failing to warn the plaintiff of a known danger both before and after discharge;

"(h) failing to treat the plaintiff before and after discharge;

"(i) failing to properly treat the plaintiff both before and after discharge;

"(j) being otherwise guilty of negligence, gross negligence, carelessness, recklessness, and/or wilful and wanton misconduct both before and after discharge." See Appellant's Complaint appearing in Appellant's Appendix at 5a-6a.

The parties' stipulation of facts and Henning's affidavit reveal that Henning's lungs and chest were normal when he was inducted into the United States Army on October 10, 1961, and this point is not contested, but that x-rays taken of Henning's chest at the Seneca Army Depot on October 7, 1963 showed that he had a "moderately advanced active tuberculosis in the right upper lobe." The report of his lungs on these x-rays, prepared by an Army doctor, "failed to indicate the presence of the tubercular condition" and Henning was never informed by the Army of his true condition either during his tenure as a serviceman or after his discharge. On November 14, 1963, Henning was discharged from military service. Shortly thereafter, but before Henning left the Seneca base, he was requested to go to the infirmary for a blood test. After waiting at the infirmary for approximately one hour without any tests being performed on him, he was instructed to leave. Either before or after his discharge or contemporaneously therewith,[1] Henning was issued a certificate dated November 6, 1963 indicating that on November 14, 1963 his condition was such that he was considered physically qualified for separation or for re-enlistment without re-examination if re-enlistment were to take place within 180 days of discharge.

In June, 1964, after experiencing a severe cough, a loss in weight, a decrease in appetite, and pains on his left side,

---

1. This point is not clear from the record.

Henning visited a physician who informed him of his tubercular condition. He was subsequently admitted to Riddle Memorial Hospital in Media, Pennsylvania where he was told that his disability was service-connected and that he would be kept in that hospital only until he had been admitted to a Veterans Administration (V.A.) Hospital. On June 23, 1964, Henning's wife filled out an application for Henning's admission to a V.A. Hospital. After several unsuccessful attempts to gain admission, Henning through the efforts of Dr. Harold Israel, beame a patient at a V.A. Hospital in Baltimore, Maryland.

On April 20, 1970, 311 F.Supp. 681, the District Court granted partial summary judgment against Henning "[a]s to all that occurred while plaintiff was in the United States Army—the misreading of the x-ray and the consequent aggravation of his tubercular condition. * * * " This order also granted Henning the opportunity to amend his pleadings with respect to his claim of "negligence in connection with the care and treatment * * * " received from the V.A. On May 11, 1970 the District Court amended its previous order so as to render that judgment final for purposes of Rule 54(b), Fed.R.Civ.Proc., 28 U.S.C.[2]

In Feres v. United States, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1959), the Supreme Court engrafted an exception to the Federal Tort Claims Act and held "that the Government is not liable * * * for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."[3] The Feres doctrine was reaffirmed by the Supreme Court in a 1963 decision, United States v. Muniz, 374 U.S. 150, 159, 83 S.Ct. 1850, 10 L.Ed. 2d 805. Also, see Dilworth v. United States, 387 F.2d 590 (3 Cir. 1967); Bailey v. De Quevedo, 375 F.2d 72 (3 Cir. 1967), cert. denied, 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274 (1967). The issue presented for our determination is whether the claim or claims upon which the District Court granted summary judgment are for injuries arising out of or in the course of activity incident to military service.

Before determining this question, it is necessary to state the various claims upon which the District Court granted summary judgment. From the pleadings, affidavits, motions, and briefs, we can discern four separate claims which were disposed of by the District Court's partial summary judgment. One claim is for the negligence of the Army doctor in misreading the x-ray taken of Henning on October 10, 1961. Another claim is for failing to advise Henning of his tubercular condition before discharge. A third claim is for failing to advise Henning of his condition after discharge.[4] A fourth claim is for issuing Henning a certificate indicating that his physical condition was such on November 14, 1963 that he was considered physically qualified for separation or for re-enlistment within 180 days without re-examination.

■■ Applying the Feres doctrine to the first claim, we have concluded that Henning cannot recover for the negligence of the Army doctor in misreading

---

2. Rule 54(b) states in relevant part: "When more than one claim for relief is presented in an action * * * the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." In its amended order of May 11, 1970, the District Court made the requisite determination that there is no just reason for

delay. Consequently, this court has jurisdiction under 28 U.S.C. § 1291.

3. See generally 35 Am.Jur.2d, Federal Tort Claims Act § 75, at 351–52; Serviceman's Right to Recover Under the Federal Tort Claims Act, 64 A.L.R.2d 679.

4. Included in this claim is the contention that the Army was negligent in not advising Henning of his condition when he reported to the infirmary for a blood test shortly after being discharged on November 14, 1963.

the x-ray. The injury caused by such misreading clearly arises out of activity incident to his military service. Henning, however, argues that the critical time under *Feres* is when the injury occurs and that his injury occurred after he was discharged. This argument is erroneous for *Feres* does not limit its holding to injuries occurring in the course of activity incident to service. It also immunizes the Government for injuries arising out of activity incident to service. We think that *Feres* focuses not upon when the injury occurs or when the claim becomes actionable, but rather the time of, and the circumstances surrounding the negligent act. This view is supported by United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L. Ed. 139 (1954), where the Supreme Court held that a discharged veteran may maintain an action against the United States for an injury suffered in a V.A. Hospital after his discharge as a result of negligent treatment of a service-connected disability. The Court allowed recovery "[s]ince the negligent act giving rise to the injury \* \* \* was not incident to the military service \* \* \*" 348 U.S. at 113, 75 S.Ct. at 144. The focus is thus upon when and how the negligent act occurs.

■ Even if we accepted Henning's contention that the critical date under *Feres* is when the injury occurs, this would not aid Henning's case for we conclude that there is no question but that tuberculosis, being the type of disease which ordinarily grows progressively worse without treatment, rendered the negligence of the officer examining the x-rays progressively operable until a permanent arrest of the disease be effected. Thus, we take judicial notice of the fact that part of Henning's injury with respect to the first claim occurred when Henning was still in the service.

■ We think that the second claim is also foreclosed by the *Feres* doctrine for, once again, the negligent act, failing to advise Henning of his condition before discharge, occurred while Henning was in the service. While this negligent act occurred shortly before his discharge, Henning was nonetheless on active duty at this time. The *Feres* decision is not predicated upon the length of time remaining before a serviceman is separated but rather upon his military status at the time of the negligent act. Compare Knoch v. United States, 316 F.2d 532 (9 Cir. 1963).

■ The third claim, as we have said, is based on the failure of the medical authorities at the Seneca Army Depot to advise Henning of his tubercular condition after his discharge. Did or did not the District Court err in granting summary judgment in favor of the United States on this claim? That there was a failure to so inform Henning is indubitable. Henning's theory is that this failure was a negligent "act" occurring after Henning's discharge and that this brings his claim within the holding of United States v. Brown, *supra*. In *Brown*, as stated above, the Supreme Court held that a discharged veteran could maintain an action against the United States for an injury suffered in a V.A. Hospital *after* his discharge as a result of negligent treatment of his service-connected disability. Brown had incurred a knee injury while on active duty in the Armed Forces and the injury led to his honorable discharge in 1944. In 1950 the Veterans Administration performed an operation on the knee but it continued to dislocate frequently. "So," as Mr. Justice Douglas stated, "another operation was performed by the Veterans Administration in 1951" and during the course of this operation "an allegedly defective tourniquet was used, as a result of which the nerves in \* \* \* [Brown's] leg were seriously and permanently injured." Mr. Justice Douglas went on to say: "The District Court agreed with the contention of petitioner that respondent's sole relief was under the Veterans Act and dismissed his complaint under the Tort Claims Act. The Court of Appeals reversed. 2 Cir., 209 F.2d 463. The case is here on a petition for certiorari which we granted, 347 U.S. 951, [74 S.Ct. 680, 98 L.Ed.

1097] because of doubts as to whether Brooks v. United States, 337 U.S. 49, [69 S.Ct. 918, 93 L.Ed. 1200] or Feres v. United States, 340 U.S. 135, [71 S.Ct. 153, 95 L.Ed. 152] controlled this case.

"The *Brooks* case held that servicemen were covered by the Tort Claims Act where the injury was not incident to or caused by their military service. 337 U.S. 49, 52, [69 S.Ct. 918, 920]. In that case, servicemen on leave were negligently injured on a public highway by a government employee driving a truck of the United States. The fact that compensation was sought and paid under the Veterans Act was held not to bar recovery under the Tort Claims Act. We refused to 'pronounce a doctrine of election of remedies when Congress has not done so.' Id., 337 U.S. at 53 [69 S.Ct. at 920]." (Star footnote omitted.) 348 U.S. at 111, 75 S.Ct. at 142. Brown was permitted to recover under the Federal Tort Claims Act.

In Schwartz v. United States, 230 F. Supp. 536 (E.D.Pa.1964), an action was brought by an ex-serviceman under the Federal Tort Claims Act predicated upon negligence in the Army's failure to take reasonable steps to inform the plaintiff that a dangerous drug (umbrathor) had been injected into his sinuses while he was in the service. The dangerous qualities of the drug did not become apparent until after the plaintiff had been discharged. The court held that there was a duty resting on the Government to follow up these cases in which the drug had been used: "The negligence here is not in its installation, but rather in not having affirmatively sought out those who had been endangered after there was knowledge of the danger in order to warn them that in the supposedly innocent treatment there had now been found to lurk the risk of devastating injury." 239 F.Supp. at 540.

We deem Henning's third claim to be insupportable. While it cannot be disputed on the present record that Henning's tubercular condition grew steadily worse after the negligence of the Seneca authorities properly to read his x-rays prior to his discharge, that failure occurred but once and Henning's disaster is due to that failure. To support Henning's claim we would have to treat the Seneca medical authorities' failure as a continuous one terminating only in June 1964 when Henning was informed of his tubercular condition. This seems beyond the contemplation of the Federal Tort Claims Act as interpreted by *Feres*. In each of the cases cited above a claim resulted from a tort occurring after termination from service. The *Brown* case does not aid Henning's position for the Supreme Court's interpretation of the Act in that case was based on an event not incident to or caused by Brown's military service, a situation plainly distinguishable from that in the case at bar.

In respect to the fourth claim of negligence, issuing Henning the certificate attesting to his good health on November 14, 1963, neither the stipulation of facts nor Henning's deposition introduced in evidence, nor anything else in the record, discloses just when the certificate of good health was given to Henning but it would appear that it was either at the actual time of his discharge or within a brief period thereafter and the delivery of the certificate, in the absence of proof to the contrary by Henning, may be assumed to have arisen from the negligent reading of the x-rays. If the foregoing be a correct interpretation of the facts and the law, the delivery of the certificate falls within the *Feres* doctrine and Henning may not recover on his fourth claim.

The judgment will be affirmed.