Edward C. KELLY and Marie Kelly,
his wife

v.

UNITED STATES of America and Certain
Past and Present Officers and Officials
of the United States Department of De-
fense Joint Chiefs of Staff, Department
of the Navy, the Atomic Energy Com-
mission, the United States Navy and the
Veterans Administration, whose names
will be inserted when ascertained, each
individually and in his official capacity.

Civ. A. No. 80-4339.

United States District Court,
E. D. Pennsylvania.

April 24, 1981.

Norman R. Segal, Philadelphia, for plaintiffs.

Paul F. Figley, U. S. Dept. of Justice, Washington, D. C., for defendants.

### OPINION

LUONGO, District Judge.

Plaintiff Edward Kelly alleges that while serving in the United States Navy in 1946 he and numerous other servicemen were exposed to nuclear radiation during the Navy's tests of nuclear weaponry in the South Pacific. Kelly contends that he developed cancer as a result of this exposure. He is joined in this action by his wife. Defendants are the United States, and unknown officials of the various federal agencies involved in the testing program who gave the orders resulting in Kelly's exposure to radiation.

Kelly has moved for certification of this action as a class action on behalf of all other naval personnel who participated in the same nuclear testing. He seeks damages under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* and for violation of his constitutional rights, and an injunction directing the United States to warn all members of the class of the dangers posed by their exposure to radiation. The United States has moved to dismiss on the ground of sovereign immunity, and the parties have stipulated that I should postpone decision on the class certification motion until after resolving the motion to dismiss.

### I. *The Tort Claims*

#### A. *Application of the Federal Tort Claims Act*

The United States first contends that Kelly may not bring this action under the Federal Tort Claims Act (FTCA), because the occurrence of which he complains took place at sea, and therefore his exclusive remedy is under the Public Vessels Act, 46 U.S.C. § 781 *et seq.* Until recently, under the Supreme Court's early decision in *The Plymouth*, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865), if the cause of action arose at sea, under the "locality" rule there was admiralty jurisdiction over the action. In *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), however, the Supreme Court criticized the locality rule as fortuitously creating admiralty jurisdiction in cases where the tort alleged had little to do with traditional maritime activities. 409 U.S. at 253–268, 93 S.Ct. at 497–504. In *Executive Jet*, the Court held that a jet aircraft crash over navigable waters was not sufficient to create admiralty jurisdiction, and established the rule that for admiralty jurisdiction to exist the wrong complained of must "bear a significant relationship to traditional maritime activity." In an earlier case, *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), the Court held that there was not admiralty jurisdiction over an accident which occurred on oil-drilling rigs anchored in the Gulf of Mexico, because the accident in question "had no more connection with the ordinary

stuff of admiralty than do accidents on piers." 395 U.S. at 360, 89 S.Ct. at 1839.

Here, the tortious conduct alleged by Kelly—exposure to radiation and subsequent failure to warn him of the effects of the exposure, is scarcely the "ordinary stuff of admiralty." Certainly the decisions to conduct the tests, and to have military personnel at the sites, were not made on board ship. On the contrary, maritime activity was obviously not central to the test program, because land sites were chosen for similar nuclear testing. *See, e. g., Jaffee v. United States*, 592 F.2d 712 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

Accordingly, I hold that if Kelly has a colorable tort claim, it is properly raised under the Federal Tort Claims Act.

### B. *Application of the Feres Doctrine*

The United States next contends that even if Kelly has properly stated a claim under the FTCA, his action is barred by the judicially created immunity from tort claims arising out of military service. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres*, the personal representative of a serviceman who perished in a fire at an army barracks brought suit under the FTCA alleging that the United States was negligent in housing troops in an unsafe building. The Court held that considerations of public policy required the conclusion that

> the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. 340 U.S. at 146, 71 S.Ct. at 159.

Kelly concedes that his claims against the United States for deliberate and negligent exposure to radiation fall within the *Feres* doctrine and must be dismissed. But he contends that his claim against the United States for negligent failure to warn him of the dangers posed by his exposure to radiation constitutes a separate tort occurring after his discharge from the military, and therefore does not fall within the prohibition of *Feres*. *See United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954).

The Court of Appeals for the Third Circuit has not yet ruled whether "an allegation that governmental officials knew of the risk of ongoing damage from ingested radioactive particles and deliberately or negligently failed to warn [the claimant] of the ongoing hazard after [he] left military service" would be actionable under the Federal Tort Claims Act. *Jaffee v. United States of America*, No. 79–1543 (3d Cir., Feb. 20, 1980), slip. op. at 5 (*Jaffee II*) (vacated for rehearing). There are, however, two decisions from within this circuit which are relevant to Kelly's position. In *Henning v. United States*, 446 F.2d 774 (3d Cir. 1971) a serviceman was given a chest x-ray by an Army physician which reflected symptoms of tuberculosis in October, 1963. The physician's report failed to recognize the presence of tuberculosis, and as a result the tubercular condition was not properly diagnosed until June, 1964. The serviceman contended that his suit under the FTCA was not barred by the *Feres* doctrine because he was alleging post-discharge negligence in the Army's failure to advise him of his condition after he had left the service. The court appeared to accept the general proposition that post-discharge failure to warn of a dangerous condition could give rise to an action notwithstanding *Feres*. It held, however, that the plaintiff's allegations did not suffice to establish that two separate torts had been committed—one pre-discharge and one post-discharge:

> While it cannot be disputed on this record that Henning's tubercular condition grew steadily worse after the negligence of the [Army] authorities properly to read his x-rays prior to discharge, that failure occurred but once and Henning's disaster is due to that failure. To support Henning's claim we would have to treat the [Army's] failure as a continuous one terminating only in June 1964 when Henning was informed of his tubercular condition. 446 F.2d at 778.

In *Henning*, the circuit court cited with apparent approval *Schwartz v. United*

*States,* 230 F.Supp. 536 (E.D.Pa.1964).[1] In *Schwartz,* while in the Army the plaintiff was injected with a radioactive dye by Army physicians. The dye was subsequently proven to be carcinogenic, and the plaintiff in fact developed cancer at the site where the dye had been injected. After discharge, the plaintiff visited Veterans Administration (VA) clinics on several occasions, and each time there were symptoms of some abnormality where the dye had been. Notwithstanding these symptoms, the VA physicians made no attempt to review the plaintiff's prior records to determine possible causes. The court held, *inter alia,* that once the dye was proven to be dangerous, the Army or VA doctors had a duty to search past medical records to determine whether it had been used in treatment, and to warn those who had been treated with the dye of its dangers. *Id.* at 540. It is not clear from the court's opinion, however, whether in its view the Army had a general duty to warn extending to all former servicemen who may have been exposed to the dye, or only to warn those who subsequently visited VA clinics, in which case the duty to warn would simply be one component of the VA physicians' professional duty to exercise due care in the course of treatment. *See id.* at 540–41.

■ Both *Henning* and *Schwartz* recognize that post-discharge tortious conduct, even though it relates back to an injury suffered during military service, may under certain circumstances be actionable under the FTCA, but neither directly addresses the issue at bar. Recent cases outside the third circuit are more on point.

In *Everett v. United States,* 492 F.Supp. 318 (S.D.Ohio 1980), the plaintiff was the personal representative of an Air Force veteran who died from cancer. She contended that the decedent, her husband, had been deliberately exposed to radiation while in the service during nuclear weapons testing conducted by the Air Force, and that this exposure was the cause of his death from cancer. The court rejected her contention that the United States could be liable for reckless endangerment for the decedent's exposure while in the service. It held, however, that the Air Force's subsequent failure to warn the decedent of the dangers posed by his exposure constituted a separate tort which, since it occurred after discharge, was actionable under the FTCA notwithstanding *Feres. Id.* 325–326. The court stressed that the torts were different in nature, the alleged pre-discharge tort being grounded upon intentional acts committed by government officials, and the alleged post-discharge tort being grounded upon negligent failure to warn, with each comprised of " 'distinctly separate pattern[s] of conduct.' " *Id.* 326.

In *Everett,* the court relied principally upon *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979). There, a serviceman was the unwitting victim of the Army's secret experiments employing hallucinogenic drugs. After discharge, he continued to suffer serious side-effects from the experiments, but the Army never informed him that he had been subjected to dangerous drugs. The court held that although Thornwell could not recover for the intentional tort he suffered while in the Army, he could recover for the Army's post-discharge negligence in failing to advise him that the symptoms from which he suffered were attributable to the drugs administered to him. *Id.* 351.

Judge Richey reasoned that permitting recovery for the type of post-discharge negligence alleged by Thornwell would not frustrate any of the public policies underpinning the *Feres* doctrine. First, if the tort complained of occurred after discharge, courts need not worry about interfering with the "peculiar and special relationship of the soldier to his superiors." *United States v. Brown, supra,* 348 U.S. at 112, 75 S.Ct. at 143. Second, the "distinctively federal relationship" between the government and members of the military, *id.* 340 U.S. at

---

1. It has been suggested that the circuit court in *Henning* overruled *Schwartz sub silentio. Thornwell v. United States,* 471 F.Supp. 344,

351, n.8 (D.D.C.1979). I agree with Judge Richey's opinion in *Thornwell* that *Henning* and *Schwartz* are consistent.

143, 71 S.Ct. at 158, no longer exists once the serviceman has returned to civilian life. Finally, the statutory provisions which Congress has provided to compensate injured serviceman, which the Supreme Court emphasized in *Feres* as one reason for barring tort claims by servicemen, no longer apply to a veteran in civilian life, and statutory provisions to protect the rights of veterans are far more limited. *Thornwell, supra*, 471 F.Supp. at 350.

In opposition to the authorities relied upon by Kelly, the government has cited authority in support of its position that Kelly's claim for post-discharge negligence is barred.

In *Stanley v. Central Intelligence Agency*, 639 F.2d 1146 (5th Cir. 1981), the plaintiff was an Army veteran who had voluntarily participated in Army experiments on chemical warfare. During the course of the experiments Stanley was given LSD without his knowledge, and thereafter he suffered from various physical and mental impairments which he alleged were caused by the drug. Stanley brought suit under the FTCA contending, *inter alia*, that the defendants were liable for their post-discharge negligent failure to monitor his condition. The Fifth Circuit noted that both *Everett* and *Thornwell* permitted recovery where the plaintiff had pleaded the occurrence of a separate tort after discharge, but without ruling on the correctness of these decisions, the court held that Stanley had not pleaded facts which gave rise to a separate tort post-discharge. 639 F.2d at 1154. It reasoned that inasmuch as Stanley remained in the service for eleven years after his participation in the experiments, the initial tort and the failure to monitor his condition both occurred "at least in part during his time as a serviceman even if they or their effects lingered after his discharge," *id.*, with the result that *Feres* barred suit.

In *Reynolds v. Department of the Navy*, No. c–2–75–427 (S.D.Oh., Feb. 8, 1976), a veteran of the Navy brought suit alleging that he was exposed to radiation while on active duty, as a result of which he later contracted leukemia. He contended that the Navy was negligent following his discharge in failing to warn him of possible adverse consequences attributable to radiation exposure. In a cursory opinion citing *Henning, supra*, the district court dismissed the plaintiff's claim on the ground that the wrong complained of was incident to military service. (Sl. op. at 2).

In a recent case, *Broudy v. United States*, No. 79–2626 LEW (GX) (C.D.Cal., Jan. 3, 1980), the widow of a Marine Corps officer brought suit alleging that her husband died from cancer caused by exposure to radiation during nuclear testing in which he participated while in the service. As in the other cases, the plaintiff attempted to avoid the bar posed by *Feres* by contending that the United States was liable for post-discharge negligence because of its failure to perform follow-up screening of test participants and to warn them of the potential danger. The court rejected this theory, reasoning that

Recognition of such a duty would vitiate the *Feres* doctrine in all cases where the alleged injuries did not manifest themselves until after a serviceman's discharge. Whether a lawsuit is predicated upon alleged negligence in the conduct of military exercise or upon a failure to provide follow-up care to soldiers negligently exposed to hazardous conditions while on active duty, the destructive effects on military discipline and the common defense would be equally crippling. (Sl. op. at 3).

■ Having reviewed the precedent to date, like the Fifth Circuit in *Stanley*, I see no need to reach the issue of whether *Thornwell* and *Everett* were correctly decided, because whatever merit there may be in those decisions, I am not persuaded that Kelly's complaint here alleges post-discharge tortious conduct which is factually distinct from the allegedly tortious conduct which occurred while he was still in the military. In effect, Kelly's complaint is that he was exposed to nuclear radiation without adequate safeguards and without warning of the possible adverse effects. I see no essential difference between defend-

ants' failure to warn him initially, and their failure to warn him thereafter. Kelly avers that the defendants knew at the time he was exposed that there was a grave risk of injury to him, but nonetheless gave orders which resulted in his exposure. Accordingly, under Kelly's own theory, the duty to warn him of the danger existed at the time he was first exposed, and the defendants' subsequent failure to warn him was but a continuation of the original wrong. As Judge Biggs expressed it in *Henning*, the "failure occurred but once, and [plaintiff's] disaster is due to that failure." 446 F.2d at 778.

Kelly contends that there is a difference between the military's original decision to expose him to radiation and its subsequent failure to supply him with warnings, because the former constituted an intentional tort, and the latter negligence. *Thornwell, supra; Everett, supra.* Although Kelly's claims may give rise to different legal theories, for purposes of the analysis here this distinction is an artificial one, because in the final analysis the factual predicate for Kelly's claim would be virtually the same under either theory.

Acceptance of Kelly's theory here would lead to the kind of problems the Supreme Court wanted to avoid in *Feres.* Unless liability for post-discharge negligent omissions by the government is carefully limited to situations in which the conduct challenged is clearly distinct from military actions immune under *Feres*, military planners who have knowledge of particular risks associated with an operation may well be inhibited in their planning by the consideration that at some future date they might be obligated to reveal the details of the operation and the risks involved. In Kelly's case, for instance, what would be the consequence if military planners had found it

necessary not to reveal that nuclear testing had occurred, or the amount of radiation generated? Would not the duty urged by Kelly require such revelation? It seems clear that to the extent that a plaintiff's claim for alleged post-discharge negligence is in reality but a skillful reformulation of a complaint for in-service negligence, the policy considerations underlying *Feres* require that the claim be dismissed.

Although in the instant case one may wish that the planners had exhibited more concern for the risks involved, the Court in *Feres* decided that in some instances the objective of an unfettered military must take precedence over the rights of individual citizens. The United States' motion to dismiss the tort claims will be granted.

■ Kelly further argues that even if I dismiss the tort claims against the United States, I should not dismiss the claims against the unnamed government officers involved in the test program until he has had an opportunity to identify them through discovery. The tort claims against the individual defendants must also be dismissed. In *Bailey v. DeQuevedo*, 375 F.2d 72 (3d Cir. 1967), the court held that the same considerations which bar suit against the government for tort claims arising out of military service also dictate that equivalent tort suits against individual army personnel be barred. *Accord, Martinez v. Schrock*, 537 F.2d 765 (3d Cir. 1976). Although the instant suit is somewhat different in that the individual defendants include officials of government agencies outside of the military itself, the claim arose out of military service, and falls within the general holdings of *Bailey* and *Martinez*. Accordingly, the tort claims against the unnamed individuals will also be dismissed.[2]

2. Kelly states claims for negligence and for intentional torts. I have some hesitation in treating these claims in the same manner. In *Jaffee II*, a panel of the Third Circuit noted that the policy reasons for immunizing government officers from suits for negligence may not support a blanket immunity for intentional torts as well. But the court did not reach this issue

and, more importantly, its opinion was vacated pending rehearing before the court *en banc*. Therefore, whatever merit there may be in the panel opinion in *Jaffee II*, the instant case is still governed by *Bailey* and *Martinez*, which, although negligence cases, set forth rules governing tort actions generally.

## II. *The Constitutional Claims*

### A. *Claims Against the United States*

 Kelly also seeks damages from the United States for violation of his constitutional rights. These claims are barred by the doctrine of sovereign immunity. Even where there exists a direct cause of action under the Constitution, the United States is not liable for the deprivation of constitutional rights unless it has waived immunity from suit, *Jaffee I, supra,* 592 F.2d at 717, and Kelly concedes that it has not done so here. Kelly's damage claims will therefore be dismissed.

Kelly also seeks injunctive relief under his constitutional theory in the form of a warning to other personnel exposed to radiation during the same tests. The Third Circuit considered a virtually identical request for equitable relief in *Jaffee I,* and held that it was not barred, because Congress, in passing the Administrative Procedure Act, 5 U.S.C. § 702, effected a limited waiver of sovereign immunity for non-statutory review of agency action. 592 F.2d at 718–720. Accordingly, the government's motion to dismiss Kelly's request for injunctive relief will be denied.[3]

### B. *Claims Against the Individual Defendants*

Kelly contends that his constitutional claims against the unnamed individual defendants should not be dismissed until he has had an opportunity to learn their identity through discovery. The government contends that this is an improper use of discovery, and that since there are presently no other known defendants, the case should be dismissed.

The government relies upon *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352, 98

S.Ct. 2380, 2390, 57 L.Ed.2d 253 (1978), as authority for its position. There, the Court held that the representative plaintiff in a class action could not resort to discovery to learn the names and addresses of class members, where the only purpose for seeking this information was to provide notice of the action to class members. The Court noted that the information sought was not relevant to any issue to be decided by the district court, but related only to the requirements of Rule 23. Accordingly, it held that Rule 23 and not the discovery rules was the appropriate instrument for deciding what information the plaintiff was entitled to receive from the defendants.

 Here, in contrast, the identity of the individual defendants is central to the issue of liability, and I am unwilling to dismiss an action against the United States when it may be able to identify the individuals who may be liable, without giving the plaintiff the opportunity to identify those individuals through discovery. Accordingly, the government's argument that dismissal of this action is necessary because Kelly has not identified the individual officers involved is rejected.

The far more important issue is whether Kelly has a direct cause of action under the Constitution, and if so, whether it is nonetheless barred by an extension of the *Feres* doctrine in the same way that tort actions against individual officers are barred by *Bailey v. DeQuevedo, supra.* Neither party has addressed this issue, and it is currently pending before the Third Circuit in *Jaffee II.*[4] Therefore resolution of this issue would be premature. The government's motion to dismiss the constitutional claims against the unnamed individual defendants will be denied.

---

**3.** In holding that Kelly's request for injunctive relief is not barred by sovereign immunity, I reserve for later decision whether Kelly's request is moot in light of the relief won in *Jaffee I.* If Kelly's claim for equitable relief were the only claim to survive the instant motion to dismiss, I would want to address the government's mootness argument at this time. However, other claims also remain to be addressed once the Third Circuit resolves *Jaffee II.* Since the government raised the mootness issue be-

lately, in its reply brief, I do not have the benefit of full briefing of this issue by the parties. Accordingly, the more prudent course is to address the mootness issue at a later time.

**4.** The panel decision in *Jaffee II* held that there was a direct cause of action under the Constitution against the individual government officers, and that they were entitled only to qualified immunity from suit.