683 F.2d 261
 Betty LASWELL; Robert Laswell; Patricia Laswell; Norita
Laswell, Plaintiffs-Appellants,
v.
Harold BROWN, U. S. Secretary of Defense; R. R. Monroe,
Director, Defense Nuclear Agency; Department of
Defense; Defense Nuclear Agency and
United States, Defendants-Appellees.
 No. 81-1768.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1982.
Decided July 21, 1982.
 
 J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Thomas E. Dittmeier, U. S. Atty., St. Louis, Mo., Robert S. Greenspan, Paul F. Figley, Dept. of Justice, Civ. Div., Appellate Staff, Washington, D. C., for defendants-appellees.
 Richard Huber, Washington, D. C., for plaintiffs-appellants Betty Laswell, et al.
 Before ARNOLD, Circuit Judge, STEPHENSON, Senior Circuit Judge, and HANSON,* Senior District Judge.
 STEPHENSON, Senior Circuit Judge.
 
 
 1
 This case presents a recurring problem of intramilitary immunity. Plaintiffs-appellants seek damages, among other claims, for the disability and eventual death of their husband and father, Charles Laswell. The plaintiffs claim that Laswell was exposed to low-level ionizing radiation as part of this country's atmospheric nuclear weapons testing program while he was on active duty in the South Pacific after World War II.
 
 
 2
 The district court[1] sustained the defendants' motion to dismiss concluding that it did not have subject matter jurisdiction and that the plaintiffs had failed to state a claim upon which relief could be granted. Laswell v. Brown, 524 F.Supp. 847, 850 (W.D.Mo.1981). The district court relied primarily on Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).
 
 
 3
 We affirm the district court's dismissal.
 
 I. BACKGROUND
 
 4
 Charles Laswell was a member of the United States Army stationed in the South Pacific in 1947-48. The United States Department of Defense conducted nuclear bomb tests in the Eniwetok Atolls in the Marshall Islands during this time. The plaintiffs allege that Charles Laswell was ordered by his commanding officers to attend and participate in three test explosions.
 
 
 5
 The basic facts, as stated by the district court, are as follows:
 
 
 6
 Between December 15, 1947 and June 11, 1948, decedent was exposed to three atomic tests on Eniwetok Atoll, Marshall Islands. Each test bomb was exploded in the air while the decedent observed it from on deck aboard ship. He would return to Eniwetok Island after each blast. After the third blast, which was on Runnet Island, the decedent returned to that island to help build a pierced planking landing strip for light planes. The strip was built almost one mile from the blast site.
 
 
 7
 Plaintiffs claim that this exposure to low-level external ionizing radiation is responsible for decedent's illness, Hodgkins Disease, which is cancer of the lymph glands. Decedent's illness was diagnosed in January, 1975. Plaintiffs allege that decedent's illness and its treatment caused a general weakening of his condition which caused or contributed to cause a massive coronary infarction on September 1, 1979, which resulted in his death on that day.
 
 
 8
 Laswell v. Brown, supra, 524 F.Supp. at 848.[2]
 
 
 9
 The plaintiffs assert that this test was conducted to determine how well combat troops could physically and psychologically withstand atomic blasts and the subsequent radioactivity. They maintain that Laswell, as well as his fellow soldiers, was never told that the participation in these experiments involved any possible health danger.
 
 Plaintiffs also allege that:
 
 10
 Statistical analysis of available data relative to exposure to large doses of low-level ionizing radiation, made by professionals who have demonstrated competence and expertise in this field, has shown that there is demonstrably a very strong correlation between such exposure and extensive latent cellular or chromosome damage in humans. Those so exposed run an abnormally high risk of later contracting a variety of cancers, including the type called Hodgkin's disease, and also of passing on latent genetic defects in their progeny. This risk is so abnormally high that medical professionals generally believe that a direct causal relationship between such exposure and Hodgkin's disease exists, if and when said disease is contracted.
 
 
 11
 In sum, the plaintiffs argue that the United States Army conducted experiments on humans without their knowledge or consent. Further, it is claimed that these experiments could have debilitating or fatal results on the soldiers themselves and their offspring.
 
 
 12
 Plaintiffs in the case at bar are Betty Laswell, Charles' widow, and their three children-Robert, Patricia and Norita. Betty seeks recovery for the loss of her husband. The children likewise pray for recovery for the loss of their father; further, they seek damages for their own exposure to "an unusually high risk of latent cellular or other genetic defects either in themselves or their offspring." All three children were born after Laswell's discharge from the service.
 
 
 13
 This lawsuit was filed in October 1980. The plaintiffs named as defendants Harold Brown, Secretary of the Department of Defense; the Department of Defense; R. R. Monroe, Director of the Defense Nuclear Agency; the Defense Nuclear Agency, an administrative agency within the Department of Defense; and the United States. Both individuals are sued in their official capacity.
 
 
 14
 The complaint avers four causes of action. The first claims that the defendants violated the Fifth Amendment by making Laswell an "involuntary guinea pig in nuclear radiation exposure tests" without his knowledge. The second cause of action claims that the defendants violated the Fifth Amendment by intentionally "failing to warn" Laswell and his progeny of the dangers inherent in the exposure to such large doses of radiation and failing to offer preventive treatment. The third cause of action claims that the defendants were negligent in exposing Laswell to radiation. In the fourth cause of action, also based on negligence, the defendants are allegedly liable for the failure to warn and treat both Laswell and his children. The complaint sought a total of $3.5 million in damages.
 
 
 15
 The defendants moved to dismiss asserting that the United States had not waived sovereign immunity for an action of this type and that the plaintiffs had failed to exhaust their administrative remedies. The district court agreed that the plaintiffs had filed this suit prematurely but did not premise its ruling on this basis. Laswell v. Brown, supra, 524 F.Supp. at 848.
 
 
 16
 The district court leaned heavily upon the Feres doctrine in granting the defendants' motion. The Feres doctrine holds that, despite the waiver of sovereign immunity for negligence actions contained in the Federal Tort Claims Act (FTCA),[3] claims by military personnel against the United States which arise out of or are in the course of activities "incident to service" are not permitted under the FTCA. See Feres v. United States, supra, 340 U.S. at 146, 71 S.Ct. at 159. Without discussing the individual defendants, the district court concluded that Feres barred the negligence and constitutional claims against the United States and its agencies. Laswell v. Brown, supra, 524 F.Supp. at 849. See 28 U.S.C. § 2679. The court also stated that Feres precluded an action based on the defendants' alleged failure to warn and treat the plaintiffs. The court refused to follow the district courts which had ruled contra and decided that the "failure to warn and the failure to provide preventive treatment and medical services to combat the effects of the exposure are continuations of the same tort" and, as such, are "incident to service" and thus barred by Feres. Laswell v. Brown, supra, 524 F.Supp. at 850.
 
 
 17
 A somewhat different conclusion was reached with regard to the Laswell children's claims. The district court stated that Feres does not prevent suit by civilians but that in this case the complaint is void of any allegations that the children have sustained any damage. It is only claimed that the children have a higher risk of disease. This, the court observed, was insufficient to support a lawsuit for personal injuries. The children's suit was thus dismissed for failure to state a claim upon which relief could be granted. Laswell v. Brown, supra, 524 F.Supp. at 850.
 
 II. DISCUSSION
 A. FTCA Claims
 
 18
 Our analysis of this case must begin with the principle of sovereign immunity. Its source is the laws of England.
 
 
 19
 While the political theory that the King could do no wrong was repudiated in America, a legal doctrine derived from it that the Crown is immune from any suit to which it has not consented was invoked on behalf of the Republic and applied by our courts as vigorously as it had been on behalf of the Crown.
 
 
 20
 Feres v. United States, supra, 340 U.S. at 139, 71 S.Ct. at 156 (footnotes omitted); see Cohens v. Virginia, 19 (6 Wheat.) U.S. 264, 411-12, 5 L.Ed. 257 (1821) (one of the first United States Supreme Court cases to adopt the principle of sovereign immunity).[4]
 
 
 21
 Congress has gradually created exceptions to the rule of sovereign immunity and given consent to be sued in certain circumstances. The FTCA is one of the major waivers of sovereign immunity passed by Congress. It confers district court jurisdiction generally over claims for money damages against the United States predicated on negligence.[5] See Miller v. United States, 643 F.2d 481, 482-84 (8th Cir. 1980), rev'd on other grounds, 643 F.2d 490 (8th Cir. 1981) (en banc).
 
 
 22
 The FTCA contains several exceptions to its waiver of sovereign immunity which could prevent liability in cases where servicemen made claims against the federal government. For example, the statute exempts claims arising from combat activities during time of war and claims arising in foreign countries. 28 U.S.C. § 2680(j), (k).[6] Despite these exceptions to the general waiver, the Feres Court grafted onto the Act another, broader exception. The Feres doctrine, the only judicially created exception to the FTCA, holds that the government is not liable for injuries to servicemen where the injuries arose out of or are in the course of activity incident to service.[7] Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 671, 97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1977) (most recent United States Supreme Court case considering the Feres doctrine).
 
 
 23
 The plaintiffs' arguments in the case at bar can be grouped into three categories. First, they argue that the Feres doctrine should be overturned; second, that Feres which concerned "common forms of negligence" is distinguishable from this case which concerns a more egregious act; and third, the plaintiffs assert this case is an example of "post-discharge" negligence pointing to the defendants' failure to warn and treat the plaintiff after Laswell left the service.
 
 
 24
 The plaintiffs' first contention need not be considered at length. Although the Feres doctrine has long been criticized by courts and commentators,[8] it is beyond question that it is the law. The Supreme Court has reaffirmed its validity as recently as 1977. Id. The Eighth Circuit, sitting en banc, has applied the doctrine slightly more than a year ago. Miller v. United States, supra, 643 F.2d at 490.
 
 
 25
 It is also clear that Laswell's activities were "incident to service." This is not a case where there are difficult lines to be drawn in deciding whether, at the time of the injury, the special relationship of the soldier to his superior was in effect. See id. at 490. See also Annot., 31 A.L.R.Fed. 146 (1977).
 
 
 26
 The second argument asserts that because of the special nature of the wrongful activity-the plaintiffs refer to the "killing" of Laswell-Feres cannot be relied upon. Feres, the plaintiffs maintain, is intended to prevent liability for "common forms" of negligence. The plaintiffs' argument in this respect overlaps with their claim that the defendants are guilty of an intentional violation of the Constitution, which is discussed below. To the extent that plaintiffs' argument concerns a claim of negligence or gross negligence, there is no authority to support the view that Feres protects the government from only common forms of negligence. "The Feres doctrine does not distinguish between claims based on the alleged level of culpability of the tortfeasor; whether a negligent, a reckless or even an intentional tort is alleged." Broudy v. United States, 661 F.2d 125, 127 n.4 (9th Cir. 1981); see Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1152 (5th Cir. 1981). Despite the fact that the allegations in this case are grave, there is no room within the language and rationale of Feres and its progeny for such a distinction. The purposes for which Feres was created and continues to exist are equally advanced regardless of whether a simple negligence case is presented or the allegations constitute a more willful act. See n.7, supra.
 
 
 27
 The third major argument under the FTCA relies primarily upon United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). In Brown, decided four years after Feres, the Court determined that Feres did not bar a cause of action presented by a veteran injured post-discharge. The plaintiff in Brown was discharged from the armed services as a result of a knee injury which occurred while he was on active duty. He received a compensation award from the Veterans Administration. In 1951, seven years after his discharge, he returned to a Veterans Administration hospital for an operation on the same knee. This operation was negligently performed. A defective tourniquet was used. As a result, the nerves in Brown's leg were seriously and permanently injured. Id. at 110-11. The Court held that Brown's claim was not barred by Feres explaining that the injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline. Id. at 112.
 
 
 28
 Applying Brown to the facts as alleged, the plaintiffs maintain that the failure to warn Laswell and his family of the potential danger and also the defendants' failure to provide preventive treatment are post-discharge acts or omissions which should permit suit under the FTCA. The plaintiffs rely upon Everett v. United States, 492 F.Supp. 318, 325-26 (S.D.Ohio 1980); Thornwell v. United States, 471 F.Supp. 344, 349-53 (D.D.C.1979); and Schwartz v. United States, 230 F.Supp. 536, 540 (E.D.Pa.1964). See also Broudy v. United States, supra, 661 F.2d at 128-29.
 
 
 29
 In Thornwell, the plaintiff asserted that he had been a victim of a human experimentation program designed to evaluate the utility of lysergic acid diethylamide (LSD) as an aid to interrogation. Thornwell was drugged with LSD without his consent or knowledge and subjected to other physical and mental abuse as part of the experiment. Thornwell v. United States, supra, 471 F.Supp. at 346. This experiment occurred while Thornwell was a private in the United States Army. Thornwell maintained that, after his discharge, the facts concerning this experiment were concealed from him and that the defendants negligently failed to provide any follow-up examinations, supervision or other medical treatment. Id. at 346, 349.
 
 
 30
 The district court in Thornwell held that a claim based on negligence, post-discharge, was consistent with Feres and compelled by Brown. Id. at 349. The court described Thornwell's allegations as charging an intentional harm while he was on active duty and then, after he left the service, the defendants failed to exercise their duty of care by neglecting to rescue him from the position of danger which they had created. The court stated that the in- service and out-of-service injuries involved two separate patterns of conduct and that the negligent act "occurred in its entirety after he had attained civilian status." Id. at 351 (emphasis in original).
 
 
 31
 The court below refused to follow Thornwell and Everett. It held that the better view was that the failure to warn and treat after discharge was barred by Feres because these claims are "continuations of the same tort." Laswell v. Brown, supra, 524 F.Supp. at 850. See Stanley v. Central Intelligence Agency, supra, 639 F.2d at 1153-56; Henning v. United States, 446 F.2d 774, 777 (3d Cir.), cert. denied, 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1971); Lombard v. United States, 530 F.Supp. 918, 920-21 (D.D.C.1981); Kelly v. United States, 512 F.Supp. 356, 358-61 (E.D.Pa.1981); In re "Agent Orange" Product Liability Litigation, 506 F.Supp. 762, 778-79 (E.D.N.Y.1980); Schnurman v. United States, 490 F.Supp. 429, 436-38 (E.D.Va.1980).
 
 
 32
 Several of the courts which conclude that Feres applies to post-discharge claims have attempted to distinguish Thornwell on the basis of the allegations made. E.g., Stanley v. Central Intelligence Agency, supra, 639 F.2d at 1153-54; Lombard v. United States, supra, 530 F.Supp. at 920; Kelly v. United States, supra, 512 F.Supp. at 360.[9] Some courts have refused to comment on the compatibility of Thornwell and Feres. E.g., Schnurman v. United States, supra, 490 F.Supp. at 437. Others have relied upon the language that the after-discharge tort must occur in its entirety after the plaintiff has attained civilian status. Stanley v. Central Intelligence Agency, supra, 639 F.2d at 1154 (alternative holding); Sweet v. United States, supra, 528 F.Supp. at 1075.
 
 
 33
 It is the position of this court that Thornwell is not mandated by Brown. In Brown, there was an affirmative negligent action after-discharge-the misuse of the tourniquet. In the case at bar and in Thornwell, the wrongful act occurred while the plaintiff was a member of the armed forces. It is only the government's failure to remedy or, with medical treatment, to limit the damage inflicted while the plaintiff was in the service that leads to a claim for relief.
 
 
 34
 We also conclude that the Thornwell position is inconsistent with Feres. The opinion in the Kelly case is particularly enlightening in this regard. Kelly concerned a claim nearly identical to Laswell's claim. Kelly had been aboard ship during nuclear tests in the South Pacific and contended that he had developed cancer as a result of this exposure to radiation. In analyzing the plaintiff's post-discharge failure to warn claims, the Kelly district court made the following analysis.
 
 
 35
 Acceptance of Kelly's theory here would lead to the kind of problems the Supreme Court wanted to avoid in Feres. Unless liability for post-discharge negligent omissions by the government is carefully limited to situations in which the conduct challenged is clearly distinct from military actions immune under Feres, military planners who have knowledge of particular risks associated with an operation may well be inhibited in their planning by the consideration that at some future date they might be obligated to reveal the details of the operation and the risks involved. In Kelly's case, for instance, what would be the consequence if military planners had found it necessary not to reveal that nuclear testing had occurred, or the amount of radiation generated? Would not the duty urged by Kelly require such revelation? It seems clear that to the extent that a plaintiff's claim for alleged post-discharge negligence is in reality but a skillful reformulation of a complaint for in-service negligence, the policy considerations underlying Feres require that the claim be dismissed.
 
 
 36
 Although in the instant case one may wish that the planners had exhibited more concern for the risks involved, the Court in Feres decided that in some instances the objective of an unfettered military must take precedence over the rights of individual citizens.
 
 
 37
 Kelly v. United States, supra, 512 F.Supp. at 361. The decision made by the Supreme Court in Feres to tip the scales in favor of an "unfettered military" controls the resolution of our issue. We agree with the court below that the plaintiffs' allegations constitute a continuing tort.[10]
 
 
 38
 In summary, the plaintiffs' claims founded upon the FTCA for negligent exposure and negligent failure to warn or treat are not within the waiver of sovereign immunity contained in the FTCA and, therefore, must be dismissed for lack of subject matter jurisdiction. See Broudy v. United States, supra, 661 F.2d at 128 n.5; Stanley v. Central Intelligence Agency, supra, 639 F.2d at 1159. See generally United States v. Sherwood, 312 U.S. 584, 586 (1941).
 
 B. Constitutional Tort Claims
 
 39
 The two remaining causes of action allege that the defendants intentionally violated Laswell's Fifth Amendment rights by exposing him to radiation and that they have intentionally violated Laswell and his progeny's Fifth Amendment rights by failing to warn or treat the plaintiffs.
 
 
 40
 These causes of action are based upon Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In Bivens, the Court implied a cause of action for damages from the Fourth Amendment in suits against federal employees. Id. at 397, 91 S.Ct. at 2005. See Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment); Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment). Although these cases provided a remedy of damages for constitutional violations, they did not answer the question of what immunity, qualified or absolute, the employees were entitled to. E.g., Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra, 403 U.S. at 397-98, 91 S.Ct. at 2005 (remanding the issue of liability for further consideration). See Butz v. Economou, 438 U.S. 478, 496-505, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (holding that federal employees in Bivens actions should have same immunity granted to state officials in suits based upon 42 U.S.C. § 1983). Most importantly, Bivens and its progeny do not waive sovereign immunity for actions against the United States; it implies a cause of action only against federal officials. As noted by Justice Harlan, concurring in Bivens, "(h)owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit." Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra, 403 U.S. at 410, 91 S.Ct. at 2012. See Jaffee v. United States, 592 F.2d 712, 717-18 (3d Cir.), cert. denied, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979) (Jaffee I ); Norton v. United States, 581 F.2d 390, 393-94 (4th Cir.), cert. denied, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978); Duarte v. United States, 532 F.2d 850, 852 (2d Cir. 1976); Kelly v. United States, supra, 512 F.Supp. at 362. See generally Dolan, Constitutional Torts and the Federal Tort Claims Act, 14 U. of Rich.L.Rev. 281, 293 (1980); Note, "Damages or Nothing"-The Efficacy of the Bivens-Type Remedy, 64 Cornell L.Rev. 667, 669-72 (1979).
 
 
 41
 Also, in Bivens-type actions the doctrine of respondeat superior is generally thought to be unavailable. Kite v. Kelley, 546 F.2d 334, 337-38 (10th Cir. 1976); Black v. United States, 534 F.2d 524, 527-28 (2d Cir. 1976).[11] Thus, the plaintiff must ferret out the officials directly responsible for the alleged constitutional violation. Many plaintiffs file complaints naming "unknown" officials as defendants. See, e.g., Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra, 403 U.S. at 390 n.2, 91 S.Ct. at 2001; Jaffee v. United States, 663 F.2d 1226 (3d Cir. 1981) (en banc), cert. denied, --- U.S. ----, 102 S.Ct. 2234, 78 L.Ed.2d ---- (1982) (Jaffee II ) (the complaint named as defendants "certain additional past and present officers and officials" of the Department of Defense, the Army and Atomic Energy Commission whose "names will be inserted when ascertained, each individually and in his official capacity").
 
 
 42
 The plaintiffs in the case at bar have failed to avoid the pitfalls described above. The United States and its agencies are not proper defendants because of sovereign immunity. The individually named defendants are likewise improperly joined because it is not claimed that they actually participated in the alleged violations. A Bivens-type action cannot be prosecuted against the United States government. Additionally, when individuals are named as defendants, it must be those that were actively involved in the alleged constitutional violation.
 
 
 43
 Even if the plaintiffs were to amend their complaint and list specific individuals, named or unnamed, who committed the alleged constitutional violations, it would not change the result. The majority position is that Feres applies to claims based upon constitutional grounds as well as to claims arising under the FTCA. Broudy v. United States, supra, 661 F.2d at 127 n.3 (citing cases); Lombard v. United States, supra, 530 F.Supp. at 920; In re "Agent Orange" Product Liability Litigation, supra, 506 F.Supp. at 772-73 n.13; Misko v. United States, 453 F.Supp. 513, 516 (D.D.C.1978), aff'd mem., 593 F.2d 1371 (D.C.Cir.1979).[12]
 
 C. Children's Claims
 
 44
 The above discussion of the FTCA and the constitutional arguments apply to the plaintiffs' claims arising out of Laswell's disability and death. The children also brought suit based upon injury to themselves. They allege that they have been exposed to an unusually high risk of disease in genetically passed cellular damage. As the district court stated, the "complaint is conspicuously void of any allegations that the children have sustained any damage other than the exposure to a higher risk of disease and cellular damage." Laswell v. Brown, supra, 524 F.Supp. at 850 (emphasis in original). We agree with the district court that a lawsuit for personal injuries cannot be based only upon the mere possibility of some future harm. Id. Furthermore, the proper focus in applying the Feres doctrine is not the time of injury but the time of the negligent act which took place during their father's military service. See Monaco v. United States, supra, 661 F.2d at 133-34; Lombard v. United States, supra, 530 F.Supp. at 921-22.
 
 III. CONCLUSION
 
 45
 Our conclusion that no recovery is allowed, even assuming the plaintiffs can prove their case, is troubling. The plaintiffs in all of these radiation exposure cases face very difficult problems even if they avoid the difficulties discussed in this opinion. Questions of causation, obtaining personal jurisdiction over all the defendants, statute of limitations defenses, individual immunity doctrines and uncertain availability of punitive damages are all real obstacles to a plaintiff's full recovery. It is not surprising that Bivens-type claims have not proven to be very successful.[13] As the Third Circuit observed:
 
 
 46
 We are also aware of what some might call a harsh result in our holding. We are not suggesting that individuals in plaintiffs' position should never receive any additional compensation from either the federal government or from private defendants which would supplement their present rights under the Veterans' Benefits Act. Any decision on whether claims of the plaintiffs should be converted to a cause of action, however, should be reserved for Congress to make in these special circumstances. It is that body which must weigh the competing priorities and policy judgments to determine whether a cause of action should be created.
 
 
 47
 Jaffee v. United States, supra, 663 F.2d at 1228 (Jaffee II ).
 
 
 48
 Several bills have been proposed in Congress to facilitate remedies for persons such as Laswell. See Comment, Constitutional Tort Remedies: A Proposed Amendment to the Federal Tort Claims Act, 12 Conn.L.Rev. 492, 530-37 (1980). However, no fundamental changes have been adopted. Private bills, which the FTCA was designed to reduce, have been successfully employed for at least one plaintiff. An Act, for the relief of James R. Thornwell, Priv.L.No. 96-77, 94 Stat. 3618-19 (1980) (awarding $625,000 to a trustee to act on behalf of Thornwell). See Thornwell v. United States, supra, 471 F.Supp. at 345-46. See also Monaco v. United States, supra, 661 F.2d at 134 n.3 (expressing the court's hope that Congress will either grant individual relief in deserving cases or amend the FTCA to allow such recoveries in the federal courts).
 
 
 49
 In summary, we affirm the district court's dismissal concluding that the plaintiffs' claims do not support subject matter jurisdiction.[14]
 
 
 50
 Affirmed.
 
 
 
 *
 The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, presiding
 
 
 [2]
 On a motion to dismiss the court must, of course, assume not only the truth of plaintiff's allegations but also all reasonable inferences which may be deduced from those allegations. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957)
 
 
 [3]
 28 U.S.C. §§ 1346(b), 2671-80
 
 
 [4]
 See generally Jaffee, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv.L.Rev. 1 (1963)
 
 
 [5]
 In 1974, the coverage of the FTCA was extended to suits arising from assault or battery but only "with regard to acts or omissions of investigative or law enforcement officers of the United States Government * * *." 28 U.S.C. § 2680(h)
 
 
 [6]
 The FTCA also excludes government liability for claims growing out of "discretionary" activities by the government and its employees. 28 U.S.C. § 2680(a)
 
 
 [7]
 The Court has expressed three rationales for the Feres decision: (1) the "distinctively federal" nature of the relationship between the government and members of the military (liability is determined by state law under the FTCA); (2) the availability of alternative remedies, specifically the Veterans Benefits Act, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen; and (3) the effect on military discipline. Stencel Aero Eng'g Corp. v. United States, 431 U.S. 666, 671-73, 97 S.Ct. 2054, 2057-59, 52 L.Ed.2d 665 (1977)
 
 
 [8]
 See Labash v. United States Dept. of Army, 668 F.2d 1153, 1156 (10th Cir. 1982); Monaco v. United States, 661 F.2d 129, 134 (9th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 2269, 72 L.Ed.2d ---- (1982); Broudy v. United States, 661 F.2d 125, 127-28 (9th Cir. 1981) (citing cases). See generally Note, From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?, 77 Mich.L.Rev. 1099, 1100 n.7 (1979)
 
 
 [9]
 These opinions noted that Thornwell apparently requires there be two separate torts-an intentional act while the plaintiff was on active duty and a separate negligent act which occurred after discharge. The complaint in this case could be interpreted to state such a claim in light of the liberal interpretation rules stated in Conley v. Gibson, supra, 355 U.S. at 45-46, 78 S.Ct. at 101-102. However, as the discussion in the text makes clear, our refusal to follow Thornwell is not based on so narrow a distinction
 
 
 [10]
 Our holding does not preclude an action based upon a truly independent, post-service tort
 
 
 [11]
 The Butz case looked to 42 U.S.C. § 1983 cases to determine the correct nature of immunity of officials in suits based on Bivens. Butz v. Economou, 438 U.S. 478, 496-505, 98 S.Ct. 2894, 2905-10, 57 L.Ed.2d 895 (1978). The same approach is appropriate with regard to the issue of whether respondeat superior is available in Bivens actions. In Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 789 (1978), the Court held that respondeat superior was not available in § 1983 actions. Id. at 691-95, 98 S.Ct. at 2036-38. Using the analogy relied on in Butz, vicarious liability would likewise not be available in Bivens-type actions. See Note, "Damages or Nothing"-The Efficacy of the Bivens-Type Remedy, 64 Cornell L.Rev. 667, 672-74 (1979)
 
 
 [12]
 The Third Circuit, sitting en banc, refused to recognize a direct cause of action under the Constitution because of the limitations expressed in Bivens, e.g., the existence of alternative remedies and special factors counseling hesitation in the absence of affirmative action by Congress. In so holding it stated:
 While we do not hold that the existence of this limited alternative remedy under the Veterans' Benefits Act would in itself preclude a cause of action, this factor, in conjunction with the effect of suits on the military, counsels us to refrain from finding a new cause of action in these circumstances.
 Jaffee v. United States, 663 F.2d 1226, 1236-37 (3d Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982) (footnote omitted).
 
 
 [13]
 It was estimated in 1979 that only seven of the several thousand constitutional tort suits brought since Bivens have resulted in judgments against a federal employee. Dolan, Constitutional Torts and the Federal Tort Claims Act, 14 U. of Rich.L.Rev. 281, 297 (1980). See also Note, "Damages or Nothing"-The Efficacy of the Bivens-Type Remedy, supra, 64 Cornell L.Rev. at 693-97
 
 
 [14]
 Because of the disposition of this case and the fact that the district court did not rely on this issue, we need not consider the defendants' assertion that the plaintiffs have failed to exhaust their administrative remedies