Sandra C. HEILMAN and Dr. Andrew M. Linz, Executors of the Estate of F. William Heilman Jr., aka Bill Heilman, aka F. Wm. Heilman, aka Frank W. Heilman Jr., aka F. William Heilman, Deceased, and Sandra C. Heilman, in her own right, Appellants,

v.

UNITED STATES of America and United States Department of the Navy, Appellees.

No. 83–1400.

United States Court of Appeals, Third Circuit.

Argued Jan. 23, 1984.

Decided April 10, 1984.

---

9. N.Y. Times, Dec. 20, 1983, at 1.

Goncer M. Krestal, Norman Perlberger (argued), James R. Kahn, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellants.

J. Paul McGrath, Asst. Atty. Gen., Edward S.G. Dennis, Jr., U.S. Atty., Dawn MacPhee, Ass't U.S. Atty., Philadelphia, Pa., Robert S. Greenspan, John C. Hoyle, Appellate Staff, Civil Div., Dept. of Justice, Joan M. Bernott (argued), Special Litigation Counsel, Torts Branch, Civil Div., Dept. of Justice, Washington, D.C., for appellees.

Before ADAMS, and GARTH, Circuit Judges, and BROTMAN, District Judge.*

## OPINION OF THE COURT

GARTH, Circuit Judge.

Sandra Heilman and Andrew Lind, as Executors ("the Executors"), and Sandra Heilman in her own right,[1] brought this action against the United States and the Department of the Navy for the wrongful death of F. William Heilman (Heilman). The complaint alleges that Heilman was exposed to radiation resulting from atomic tests in which he participated (1) while he was enlisted in the Navy from 1944 to

* Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation.

1. Sandra Heilman is the daughter of decedent F. William Heilman.

1947, and (2) while he was employed as a civilian consultant to the Navy from 1947 to 1955. Heilman subsequently contracted multiple myeloma, a cancer of the bone marrow, and died in 1981 from complications arising out of that disease. The Executors contend that the myeloma resulted from the previous exposures to radiation, and that the United States should have warned Heilman of the dangers of radiation in order that he might seek prompt medical treatment.

The United States moved to dismiss the case under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), contending that: (1) recovery for injuries suffered while Heilman was enlisted in the Navy is barred by the *Feres* doctrine, and (2) compensation for injuries received while a civilian federal employee is available exclusively through the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8116(c). The district court agreed, and dismissed the action. We affirm.

### I.

The complaint alleges that F. William Heilman served on active duty with the Navy at the Pearl Harbor Naval Shipyard from 1944 to 1947. During that time, he participated in numerous atomic tests, including "Operation Crossroads," the "washdowns" following "Shot Baker" in the Pacific, and the "scientific investigation of TBM-3" which had been "deep-sixed" from the *U.S.S. Independence.*

Heilman was also retained as a civilian employee of the Navy following his discharge in 1947, serving as a radiological safety monitor and engineer. In the course of his employment, he participated in the monitoring and decontamination of radioactive ships and aircraft, and the dumping of radioactive materials at sea.[2]

The complaint contends, inter alia, that subsequent to Heilman's discharge from the Navy, the United States was negligent in failing to:

1.  obtain, compile, and review complete records on Heilman's participation in the testing of atomic weapons;
2.  affirmatively seek out Heilman and *warn him of the dangers and risks associated with radiation exposure;*
3.  provide Heilman with necessary examinations, diagnostic care, and medical treatment in light of his exposure.

*See* Complaint ¶ 15(a)–(h), App. at 6a–7a. The Executors contend that this "failure to warn" delayed the detection and treatment of Heilman's cancerous condition, thereby exacerbating its severity and ultimately leading to his death. The Government having moved under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss the Complaint, we are obliged to credit as true all allegations of the Executors' pleadings. *E.g., McKnight v. Southeastern Pennsylvania Transportation Authority,* 583 F.2d 1229 (3d Cir. 1978).

### II.

We address first whether damages arising out of Heilman's military service are actionable in the courts. The liability of the United States for injuries received by members of the armed forces has been the subject of numerous judicial opinions, all of which stem from the seminal case of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres,* the Supreme Court held that the Federal Tort Claims Act did not waive the sovereign immunity of the United States for injuries suffered incident to military service, and therefore the courts had no jurisdiction to entertain the suit. *See also Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Our threshold inquiry must therefore be whether *Feres* bars recovery for Heilman's death.

In determining whether the *Feres* doctrine is applicable to a given set of facts, this Court has held that the proper focus is "not upon when the injury occurred or

---

**2.** As a civilian, Heilman participated in Operations Upshot-Knothole, Buster-Jangle, Ivy, Greenhouse, Castle, Smoky, and Simon. He also participated in the "washdowns" of the *U.S.S. Yags 39* and *40,* the *U.S.S. Granville Hall,* and the *U.S.S. George Eastman.*

when the claim became actionable, but rather the time of, and circumstances surrounding the negligent act." *Henning v. United States*, 446 F.2d 774, 777 (3d Cir. 1971), *cert. denied*, 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972). We therefore look to the time when the allegedly tortious Government conduct occurred; if that conduct arose while the claimant was still a member of the military, then his action is barred.

Under this analysis, it is clear at the outset that no recovery is possible for the injuries suffered by Heilman due to the original exposure to radiation which occurred while he was stationed in the Pacific. The decision to expose him to that radiation was made while he was an enlisted man in the Navy, and therefore the United States is immune from liability for that decision under *Feres* and *Henning*. As we understand the Executors' position, they do not argue that they could collect for such injuries caused by the initial exposure.

In an attempt to circumvent *Feres*, however, the Executors seek recovery not for the original decision of the Government to expose Heilman to radiation, but rather for the Government's *failure to warn* him of the dangers of such radiation which allegedly occurred *subsequent* to his discharge from the Navy. They contend that this negligent act was committed when Heilman was a civilian, and thus recovery is not barred. Presumably, damages would be calculated by determining in some way what injuries would have been avoided had Heilman received adequate warning. This "failure to warn" theory of recovery has not received liberal acceptance by the courts.[3] This Court, for instance, has expressly rejected a failure to warn as an independent basis of recovery, when that failure arises from the same operative conduct which caused the original injuries. In *Henning*, 446 F.2d 774, the plaintiff alleged that military doctors negligently misread his x-rays and failed to diagnose his tubercular condition. Although the original misdiagnosis occurred during military service and thus was clearly precluded by *Feres*, Henning alleged that the doctors were further negligent in failing to warn him of his condition after discharge.

The *Henning* Court, however, rejected these arguments. It found that a "failure to warn" does not constitute a "continuous tort" which would terminate only when plaintiff was finally notified of his condition. Rather, the Court found that any negligence in failing to warn Henning occurred but once, when the doctors first misdiagnosed the ailment. *Henning*, 446 F.2d at 778. Thus, this Court, among others, holds that, even if there exists any duty to warn, it arises only at the time when the Government first knew or should have known of the hazardous condition, and any breach of that duty begins and ends at that time.

Since, in most situations, the dangerous nature of a particular hazard is known at the time of contact or exposure, any breach of a duty to warn would arise contemporaneously under *Henning*. If that breach arose when the claimant was in military service, then recovery is barred by *Feres*. In their briefs and at oral argument, however, the Executors contended that, in this case, the duty to warn Heilman did not

---

**3.** See *Hamilton v. United States*, 564 F.Supp. 1146 (D.Mass.), *affirmed*, 719 F.2d 1 (1st Cir. 1983) (per curiam); *Laswell v. Brown*, 683 F.2d 261, 267 (8th Cir.1982), *cert. denied sub nom. Laswell v. Weinberger*, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Stanley v. CIA*, 639 F.2d 1146, 1153–56 (5th Cir.1981), all of which rejected "failure to warn" claims where the allegedly negligent act originated during military service.

The "failure to warn" theory was accepted by the courts in *Everett v. United States*, 492 F.Supp. 318 (S.D.Ohio 1980), and *Thornwell v. United States*, 471 F.Supp. 344 (D.D.C.1979). Both *Everett* and *Thornwell*, however, emphasized that such a tort would be recognized only when the complaint alleged a "separate" or "independent" negligent act occurring "entirely after discharge," *Everett*, 492 F.Supp. at 325–26; *Thornwell*, 471 F.Supp. at 351, although it is not clear what circumstances would be found by those courts to implicate a "separate" or "independent" act. *See infra* note 5.

arise until *after* his discharge, since historically, the United States was not aware of the dangers of radiation until some time after 1947. If true, this might present the unusual situation in which a duty to warn of a hazardous condition arises *after* exposure to that hazard has occurred.

In *Broudy v. United States*, 722 F.2d 566 (9th Cir.1983) (*Broudy II*), the complaint also alleged that the decedent was exposed to radiation during military service. It further alleged that the Government did not learn of the dangers of radiation until after the deceased had been discharged. *Id.* at 568. *See also Broudy v. United States*, 661 F.2d 125, 128–29 (9th Cir.1981) (*Broudy I*) ("Government's failure to warn ... might constitute [cognizable] act if the Government learned of the danger after [decedent] left the service"). The Ninth Circuit held that the claim for post-discharge failure to warn should not be dismissed, but rather must be heard on the merits, at least until it could be determined whether such failure to warn was a cognizable tort under applicable state law.[4]

We need not reach the issues addressed by *Broudy II*, however, since it is clear to us that the pleadings, which we must take as true, do not allege a failure to warn which arose subsequent to discharge, and therefore the complaint cannot sustain the argument found persuasive by the *Broudy II* court. Paragraph 10 of the complaint avers that, by compelling Heilman to participate in atomic testing:

> defendants knowingly, intentionally, deliberately, recklessly, and/or negligently exposed F. William Heilman, and others similarly situated, to high and dangerous levels of radiation, without their knowledge, permission, awareness and consent, *knowing that said exposure posed a grave risk of injury or death to decedent and others similarly situated.*

Complaint ¶ 10, App. at 5a (emphasis added).

---

**4.** The *Broudy II* court remanded the action so that the district court could determine where the "failure to warn" took place, and thus what law would be applicable. *See* Federal Tort

The Executor's own pleadings therefore contend that the United States had knowledge of the dangers of radiation *at the time Heilman was exposed,* i.e. when he was still enlisted in the Navy. Taking this factual averment as true, as we must do on a motion to dismiss, then any duty to warn would have arisen at the same time as the exposure to radiation occurred. Recovery is therefore barred for any breach of that duty by *Feres* and *Henning.*

Very similar circumstances were present in *Lombard v. United States*, 690 F.2d 215 (D.C.Cir.1982) (serviceman who was exposed to radiation alleged failure to warn), *cert. denied,* —— U.S. ——, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983). In citing to this Court's opinion in *Henning* and in dismissing the claimant's complaint, the *Lombard* court noted:

> Lombard concedes that the Army knew of the potential dangers involved in exposing servicemen to radioactive substances at the time of exposure itself. The negligent act of "failing to inform," then, *began at the time of initial exposure and continued through to the present.* We are not dealing with two separate torts, therefore, but one *continuous* tort.

It is apparent that Lombard believes the failure to warn occurred early on since the complaint alleges that:

> *[a]t all relevant times from 1944 to the present, defendants,* their agents and representataives [sic], and their predecessor agencies and officers ..., acting jointly and severally, and in conspiracy with each other, *have fraudulently concealed information concerning the increased risk of somatic and chromosomal injury to persons such as Theodore Lombard and Ruth, his wife, and their family, by reason of work performed at or for the Los Alamos facility during the period 1944–1946 without protection from radiation exposure.*

Claims Act, 28 U.S.C. § 1346(b) (1976) (liability of United States determined by law of place of negligence).

Complaint, ¶ 35 (JA at 11a) (emphasis added).

> It is thus unquestioned that Lombard's "injur[y] ... *did* ... arise out of or in the course of military duty." Accordingly, the Army's negligent act is barred from suit by *Feres*.

*Id.* at 220–21 (citation omitted, emphasis contained in original).

Heilman's complaint contains essentially the same admission as that in *Lombard*, and the same reasoning applies. Since the failure to warn arose at the same time as the original injury, and both occurred while Heilman was enlisted in the military, the *Feres* doctrine leaves the courts without jurisdiction to entertain the suit.[5]

We will therefore affirm the order of the district court to the extent that it dismissed the claims for negligence committed while Heilman was a member of the military, including any breach of a "duty to warn."

## III.

We next consider the Executor's arguments that the district court erred in dismissing those claims based on injuries received while Heilman was a civilian employee of the Navy. This necessarily involves an examination of the provisions of the Federal Employees Compensation Act (FECA), 5 U.S.C. §§ 8101–8193.

FECA provides a comprehensive remedy to a federal employee for injuries "sustained while in the performance of his duty." 5 U.S.C. § 8102. The compensation which is awarded under FECA is determined using exhaustive statutory guidelines, *see* 5 U.S.C. § 8107, and is under the administration of the Secretary of Labor, who is the ultimate arbiter of the amount, if any, of compensation.

FECA is also the *exclusive* remedy for injuries falling within its coverage. 5 U.S.C. § 8116(c) provides:

> (c) The liability of the United States or an instrumentality thereof with respect to the injury or death of an employee is *exclusive and instead of all other liability of the United States* or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

Moreover, the decision of the Secretary of Labor on whether FECA covers the alleged injury, and on the amount of compensation, if any, to be awarded, is final, and review of any kind by a court is absolutely barred. 5 U.S.C. § 8128(b)(2). *See DiPippa v. United States*, 687 F.2d 14 (3d Cir.1982) (Secretary's decision regarding coverage under FECA absolutely immune from judicial review, whether particular determination grounded in logic or precedent); *Hancock v. Mitchell*, 231 F.2d 652 (3d Cir.1956) (upholding constitutionality of prohibition on judicial review). Indeed, if a claim is covered under FECA, then the federal courts have no subject matter jurisdiction to entertain the action, since the United States has not otherwise waived its sovereign immunity to suit. *See Joyce v.*

---

5. In *Everett v. United States*, 492 F.Supp. 318, cited *supra* note 3, it is not clear whether the complaint properly alleged that the United States first learned of the dangers of radiation *subsequent* to discharge. *See Everett*, 492 F.Supp. at 325 n. 4 (complaint alleged that "defendant ... exposed the plaintiff's decedent ... to extremely hazardous conditions of radioactivity *and then* failed to adequately warn [decedent] of the harmful and dangerous effects of exposure ... which were known or should have been known by the defendant").

In *Thornwell v. United States*, 471 F.Supp. 344, cited *supra* note 3, the district court construed the complaint to aver that the United States *intentionally* harmed the claimant by exposing him to harmful doses of LSD, thereby implying that the Government knew of the dangers of LSD at the time it was administered. To the extent that *Thornwell* would allow a cause of action for failure to warn, when any duty to warn arose in the course of military service, we decline to follow it. *See Laswell v. Brown*, 683 F.2d at 267 (rejecting *Thornwell*), cited *supra* note 3.

*United States*, 474 F.2d 215, 219 (3d Cir. 1973). Our first task, therefore, is to determine whether the wrongs complained of in the pleadings are cognizable in the courts.

■ The threshold requirement for determining FECA coverage is that the injuries alleged must be "sustained while in the performance of [the employee's] duty." 5 U.S.C. § 8102. The ultimate and conclusive arbiter of this question, however, is not the courts, but rather the Secretary of Labor. *DiPippa*, 687 F.2d at 16. In deference to this authority, this Court has held that where there is a "substantial question" regarding FECA coverage, the federal courts will not entertain a claim, but rather will abstain from further action until the Secretary has made a determination regarding FECA coverage. *Id.* A "substantial question" exists unless it is certain that the Secretary would find no coverage. *Id.* By the same token, however, no reason exists for a court to stay further action, and thereby retain jurisdiction, where it clearly appears from the allegations of the complaint that coverage unquestionably obtains, i.e. where the injuries undoubtedly occurred while the employee was performing his duty on behalf of the United States or its agency. In such a case, it is the Secretary of Labor, and not the courts, who must decide the issue of liability and damages.

■ Under the facts of this case, not only is there a "substantial question" of FECA coverage which would vest the Secretary with jurisdiction over Heilman's claim, but indeed the allegations in the pleadings themselves establish FECA coverage to a certainty. The complaint avers:

7. *From 1947 until 1955, decedent was a civilian employee with the U.S. Navy.*

8. *As a civilian employee,* decedent served as a radiological safety monitor and engineer and either supervised or participated in the investigation, monitoring and decontamination of radioactive ships and aircraft, including, but not lim-

ited to, the following missions or projects:

[description of projects in which Heilman participated as civilian employee]

9. Defendants, U.S. and U.S. Navy, acting individually and jointly, in their official capacities, planned, organized and ordered the nuclear tests and blasts in which decedent participated, and which are referred to in the above paragraphs, and directed decedent, and others similarly situated, to attend and be exposed to high and dangerous levels of radiation.

10. By the foregoing acts, defendants knowingly, intentionally, deliberately, recklessly, and/or negligently exposed F. William Heilman, and others similarly situated, to high and dangerous levels of radiation, without their knowledge, permission, awareness and consent, knowing that said exposure posed a grave risk of injury or death to decedent and others similarly situated.

Thus, on the very face of the complaint, the injuries complained of were suffered by Heilman in his capacity *as a civilian employee*, and while he was under the direction of the United States as his employer. Such injuries are covered under FECA, and therefore subject matter jurisdiction is lacking in the courts to entertain actions apart from FECA. Since on a motion to dismiss, the only facts which we may consider are those contained in plaintiff's pleadings, we are drawn inexorably to the conclusion that the injuries described by the complaint are compensable only by the Secretary of Labor and not by an action brought in the federal courts.

If there were some question or doubt under the facts before us as to whether Heilman's injuries were suffered while in the performance of his duties as a civilian employee with the Navy, we would not hesitate to follow our established practice of instructing the district court merely to stay proceedings pending the Secretary's determination of FECA coverage. *See DiPippa*, 687 F.2d 14 (proceedings stayed in case where employee received swine flu vaccine on government premises during

working hours); *Joyce,* 474 F.2d 215 (proceedings stayed in case where employee fell on sidewalk outside of workplace while arriving to report for work). It is elemental, however, that federal subject matter jurisdiction must appear on the face of the complaint. *E.g. Chasis v. Progress Manufacturing Co.,* 382 F.2d 773 (3d Cir.1967); *see also* Fed.R.Civ.P. 8(a). In a case such as this, where the plaintiff's own pleadings aver facts which establish to a certainty that subject matter jurisdiction does *not* exist in the district court because of the Secretary's exclusive role in adjudicating FECA claims, then the district court has no choice but to dismiss the action. We can therefore find no error in the order of the district court below.[6]

## IV.

While we are not unsympathetic to the injuries suffered by Heilman, and to the circumstances under which he received them, such sympathy cannot create federal jurisdiction where none exists. The order of the district court dismissing the complaint will be affirmed.

ADAMS, Circuit Judge, concurring.

Between 1945 and 1962, the United States detonated close to two hundred nuclear devices at test sites in the United States and the Pacific Ocean. It is estimated that approximately 400,000 military personnel and civilian employees were exposed to radiation during these test programs.[1] As indicated by the appeal we decide today, veterans, former government employees, and their families have increasingly turned to the courts for redress of the harm suffered as a result of radiation exposure. Although I concur in the judgment of the panel and accept the reasoning undergirding its decision, I do so with some reluctance. My hesitation does not arise out of a disagreement with my colleagues, but instead reflects my concern about the limited relief provided to those who have been injured while serving their country.

At common law, the United States as sovereign was immune from civil tort liability for damages. Apparently sensing the injustice of allowing the government to escape responsibility for the tortious acts of its agents, Congress, through the Federal Tort Claims Act (FTCA), allowed the government to be sued for injuries caused by its agents whenever a private person would be liable under similar circumstances. 28 U.S.C. § 2674 (1976). For sensible reasons, the Supreme Court carved out an exception to the general liability established by the FTCA, when it held in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), that members of the military may not sue the government

---

**6.** The Executors also contend that the exclusivity provision of FECA does not apply in cases involving *intentional* torts. Although there is no direct support for this proposition, they analogize to various state court decisions which have held that state worker's compensation statutes, which are normally the exclusive remedy for work related injuries, do not bar independent lawsuits against employers for intentional wrongdoing. *E.g. Readinger v. Gottschall,* 201 Pa.Super. 134, 191 A.2d 694 (1963); *see also Weldon v. Celotex Corp.,* 695 F.2d 67, 72–73 (3d Cir.1982); *Neal v. Carey Canadian Mines, Ltd.,* 548 F.Supp. 357 (W.D.Pa.1982); 2 Larson, *The Law of Workmen's Compensation* § 68.13 (1975).

The United States, however, is not a normal employer, and FECA is not a normal worker's compensation act, since it implicates the government's sovereign immunity. The exclusivity provision of FECA does not merely deprive the plaintiff of a cause of action; it also limits the jurisdiction of the courts to hear the complaint. Analogy to conventional worker's compensation statutes is therefore misplaced, since private employers do not enjoy sovereign immunity and thus cannot protect themselves from legal action should an employee have a claim against them. If FECA is applicable, therefore, i.e., if the injury is suffered in the course of the employee's duty, then it would not matter whether the cause of the injury was an intentional or negligent act. Jurisdiction would not lie in either event. The fact that a tort is intentional certainly does not preclude it from being suffered while in the performance of a public employee's duty. Indeed, Heilman's exposure to radiation, according to the complaint, occurred only while he was executing his responsibilities as a radiation safety monitor and engineer.

**1.** Grim Legacy of Nuclear Testing, N.Y. Times, Apr. 22, 1979 § 6 (magazine), at 70.

for negligent torts incident to their military service.

Various courts have applied the *Feres* doctrine in recent years to deny a cause of action to plaintiffs whose need for a remedy is particularly acute. Thus, *Feres* has been invoked to bar suit against the United States by victims of military experimentation with psychedelic drugs, by victims of the herbicide Agent Orange, and, as our decision today confirms, by victims of negligent and perhaps even deliberate exposure to atomic radiation. *See, e.g., Mondelli v. United States,* 711 F.2d 567 (3rd Cir. 1983) (radiation); *In re Agent Orange Product Liability Litigation,* 506 F.Supp. 762 (E.D.N.Y.1980); *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979) (drug experimentation).

Despite the often harsh results, some courts have expanded *Feres* to bar virtually every kind of negligence claim that veterans or their families can bring against the government. Courts have construed *Feres* to preclude claims of negligent conduct by individual government officials, intentional or constitutional torts by individuals and by the United States, third-party indemnity against the government, and post-discharge failure to warn.[2] *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (constitutional torts); *Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) (indemnity); *Lombard v. United States,* 690 F.2d 215 (D.C.Cir.1982) (failure to warn); *Jaffee v. United States,* 663 F.2d 1226 (3d Cir.1981) (in banc) (intentional torts).

To avoid the *Feres* rule, plaintiffs have urged, with varying success, several exceptions to the doctrine: 1) a "continuing tort" theory, which permits recovery if a negli-

gent act occurred while an individual was in the service and the effects of the initial act linger after the discharge; 2) multiple negligence theories, which, like the one urged upon us today, apply when official negligence toward an individual in the service is compounded by negligence after the individual has become a civilian; and 3) a failure to warn theory, which, again as asserted in the argument on this appeal, allows recovery if the military has committed an intentional act and negligently fails to protect the soldier turned civilian from the consequences of the original wrong. *See generally Thornwell, supra,* 471 F.Supp. at 352. Troubled by the inequities of a patchwork of exceptions to a generally salutary rule, several courts have objected to the use of "artful pleading" that transforms conduct covered by *Feres* into separate and ill-defined categories of cognizable harm. *See Shearer v. United States,* 723 F.2d 1102, 1108 (3d Cir.1983) (Garth, J., dissenting); *Thornwell, supra,* 471 F.Supp. at 352.

The existence of a system by which soldiers, veterans, and their families could receive some compensation for harm they suffered in the service of their country clearly influenced the original decision to preclude suits of the sort before us on review. *Feres, supra,* 340 U.S. at 145, 71 S.Ct. at 158. There is reason to believe that this system has broken down. The problems that former servicemen confront in seeking aid for themselves and their families are well-known. The Veterans' Administration, for instance, does not have statutory authority to compensate genetically damaged children of veterans exposed to radiation or herbicides.[3] As a result, aggrieved parties have turned more

---

**2.** *Feres* has also been employed to bar suit against the United States when the negligence of its civilian employees allegedly led to the loss of life in contexts only tangentially related to military service. *Woodside v. United States,* 606 F.2d 134 (6th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *Uptegrove v. United States,* 600 F.2d 1248 (9th Cir. 1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980).

**3.** *See* 38 U.S.C. § 310 (1976) (compensation limited to veterans). For a general account of the inadequacy of federal compensation programs, see Jungreis, Pushing the *Feres* Doctrine A Generation Too Far: Recovery For Genetic Damage To The Children Of Servicemembers, 32 Amer. U.L.Rev. 1039 (1983).

and more frequently to the courts for relief and have developed more and more creative theories to circumvent the *Feres* bar. This had done little good for these claimants or for a system of jurisprudence based on stare decisis.

There may be compelling reasons for distinguishing the claims of servicemen from the typical tort action. Nonetheless, if we are to fulfill the duty described by Lincoln and inscribed on the Veterans' Administration building of "car[ing] for those who have borne the battle," a system must be developed by which those who have suffered for their country can be compensated. However, this responsibility under our form of government belongs not to the judiciary, but to the legislature. Given the courts' already overcrowded dockets and their inability to provide relief to these claimants under the *Feres* doctrine, it would appear most appropriate for Congress to consider legislation that shifts the cost of defending our country to society as a whole and away from veterans and their families.