PUNNETT, Hope and Hinkie, Irene and Hinkie, Paul, a minor, by his parents, Howard E. and Irene Hinkie and Hinkie, Howard E., Administrator of the estate of Timothy Hinkie, deceased, Plaintiffs,

v.

UNITED STATES of America et al., Defendants.

Civ. A. No. 79–29.

United States District Court, E.D. Pennsylvania.

Oct. 25, 1984.

Paul N. Minkoff, Klovsky, Kuby & Harris, Herbert B. Newberg, Herbert B. Newberg, P.C., Philadelphia, Pa., for plaintiffs.

Paul F. Figley, Robert C. Longstreth, Torts Branch, Civ. Div., U.S. Dept. of Justice, Robert L. Brittigan, Gen. Counsel, Defense Nuclear Agency, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this action plaintiffs seek an order compelling defendants to inform United States servicemen who participated in nuclear testing ("atomic vets") of the resultant health risks. Specifically, plaintiffs seek a warning addressing an alleged increased risk of genetic defects, both in the vets and in their offspring. Presently before me is defendants' motion to dismiss or stay the action. Undergirding the motion is plaintiffs' failure to exhaust administrative remedies. For the reasons that follow, defendants' motion will be granted and this action dismissed.

Soldiers "injured in the course of activity incident to service" cannot sue the United States government for damages. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Such suits are barred by the doctrine of sovereign immunity, and unlike many claims against the government, this immunity was not waived by the Federal Tort Claims Act. *Id.* In *Feres*, the Supreme Court recognized the need to grant military personnel broad discretion in their decision making process.

While the *Feres* doctrine, and its underlying reasoning, reflect a practical awareness of the exigencies of military command, its sometimes harsh results have been criticized. *See, e.g., Heilman v. United States*, 731 F.2d 1104, 1111–13 (3d Cir.1984) (Adams, J., concurring); *Jaffee v. United States*, 468 F.Supp. 632 (D.N.J.1979), *aff'd* 663 F.2d 1226 (3d Cir.1981) (en banc), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). This criticism is especially acute where *Feres* bars recovery by those unable to receive compensation from the Veterans Administration. *See* Note, *Pushing the Feres Doctrine a Generation Too Far: Recovery for Genetic Damage to the Children of Servicemembers*, 32 Amer. U.L.Rev. 1039 (1983). Reflecting dissatisfaction with the harsh results obtained in these cases, and perhaps even a broader dissatisfaction with the *Feres* doctrine itself, courts have fashioned a "patchwork of exceptions." *Heilman v. United States*, 731 F.2d at 1112 (Adams, J. concurring). All in all, this state of affairs has resulted in judicial precedent which does "not always appear logical or consistent." *Shearer v. United States*, 723 F.2d 1102, 1108 n. 1 (3d Cir.1984) (Garth, J., dissenting).

One of the exceptions to the *Feres* doctrine is discussed in *Jaffee v. United States*, 592 F.2d 712 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). In *Jaffee*, the plaintiffs sought to avoid the insurmountable hurdle of the 1950 *Feres* doctrine, by arguing that sovereign immunity had been waived when Congress enacted the 1976 amendments to the Administrative Procedure Act. In essence, they styled their complaint as one seeking review of agency action. Furthermore, as explained by Judge Rosenn, it was not one but two agency actions which were being challenged. The first agency action was the Army's order mandating Jaffee's presence at the atomic explosion. The second agency action was the Army's failure in the years since the explosion to give a medical warning and provide medical care to Jaffee. Because Jaffee sought only medical care and not declaratory relief as to the first agency action, the Third Circuit found the claim barred by the *Feres* doctrine. However, insofar as Jaffee sought review of the Army's failure to warn, the court

found a cause of action available under the provisions of the Administrative Procedure Act.[1]

After finding that the Army's "failure to warn" stated a cognizable claim, the court discussed whether plaintiffs' failure to present their claim initially to the appropriate agency foreclosed judicial review. Citing the "irreversible and perhaps fatal consequences" that could result from each day of delay, and the Army's failure to warn despite both its knowledge of the hazards of radiation, and its awareness of Jaffee's request for a warning, the court concluded judicial review was not barred "under the circumstances of this case." *Id.* at 720. While these reasons appear to be established justifications for failure to exhaust administrative remedies, *see Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290, 293 (3d Cir.1982), the *Jaffee* court expressly stated that "the doctrine of administrative exhaustion has no application to this case." *Jaffee v. United States,* 592 F.2d at 719 n. 16. Therefore, I will first address whether that doctrine applies to the case *sub judice* and secondly, I will discuss whether plaintiffs have satisfied one of its exceptions.

■ "The basic premises underlying the exhaustion requirement are that (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors." *Marrero v. Warden, Lewisburg Penitentiary,* 483 F.2d 656, 659 (3d Cir.1973) *rev'd on other grounds,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). The first of these factors presents salient reasons for requiring exhaustion in this case. As defendants' unopposed affidavit indicates, the Defense Nuclear Agency (DNA) has undertaken an extensive program developed to research the effects of radiation, both in general and as it applies to the specific Army operations in which soldiers were exposed. This information is being voluntarily disseminated to atomic vets. In fact, the DNA is making a concerted effort to contact atomic vets, supply them with relevant information, and encourage follow-up medical exams in Veterans Administration hospitals. The government has submitted to me volumes of information it has distributed, evidencing a level of expertise far surpassing anything this court could develop. *See, e.g., Quigley v. Exxon Co.,* 376 F.Supp. 342 (M.D.Pa.1974). Additionally, the DNA is developing a record as to what should be contained in the warning plaintiffs seek. While doing so, the DNA is distributing the results of its studies; that is the DNA is distributing facts, although it may not be distributing conclusions from these facts as plaintiffs want. As I stated in my opinion denying preliminary injunctive relief, the harm which could result from an improvidently issued, conclusory warning, could be as devastating as no warning at all. *See Punnett v. Carter,* 621 F.2d 578, 587–88 (3d Cir.1980).

Turning to the second factor, I conclude judicial resources will be conserved by requiring exhaustion. Not only will exhaustion facilitate development of a factual record as discussed above, but it may very well moot the controversy if plaintiffs prevail in convincing the DNA of the soundness of their conclusions. Significantly, this is not a situation where the Army has flatly stated it would not voluntarily comply with the litigants' request. *See Garmon v. Warner,* 358 F.Supp. 206 (W.D.N.C. 1973). Rather, this case involves a situation where the Army, based upon its own research, without meaningful input from plaintiffs, simply disagrees with the conclusions plaintiffs have reached. Even more importantly, this case involves a situation dealing with detailed scientific data in a

---

**1.** Without elaboration, the *Jaffee* court found all claims for medical care barred by sovereign immunity. For a discussion of the reasons why medical care damages are not available to atomic vets, even if they seek only those medical care damages allegedly necessitated by the Army's failure to warn, *see Heilman v. United States,* 731 F.2d 1104 (3d Cir.1984).

field which can only be characterized as in its infancy. Nothing indicates the DNA would refuse to distribute a warning satisfactory to plaintiffs if either plaintiffs' research shows such a warning is proper or if further research evidences the soundness of plaintiffs' position.

Finally, it bears notation that because of plaintiffs' failure to request relief from the DNA, that agency has not had the benefit of plaintiffs' research and advocacy. By mandating consolidation of efforts before one tribunal, any warning which issued would reflect a deliberate and fully informed *scientific* judgment based upon *all* the available scientific data. It would not be the decision of a *jurist* who was uninvolved in the underlying scientific research. This can only result in a more enlightened decision.

As to the third factor, it is evident that the Army should be permitted to continue, through the DNA, with its research, until well informed decisions can be reached. *See Robinson v. Dow*, 522 F.2d 855, 857 (6th Cir.1975). This conclusion is especially true in the case at bar because the decisions being challenged relate to the interaction between the military branches of our government and servicemen, an area traditionally placed off limits to the courts by the *Feres* doctrine.

After reviewing all the above, I conclude this case is distinguishable from *Jaffee v. United States*, 592 F.2d 712 (3d Cir.) *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), wherein exhaustion was found not to be a prerequisite to judicial review. *Id.* at 719 n. 16. Nothing in *Jaffee* suggests the parties advanced the pendency of DNA proceedings as a ground for requiring exhaustion. This is understandable since the DNA was just beginning its investigation at the time *Jaffee* was decided. Furthermore, because a warning has been issued by the DNA as a result of the *Jaffee* litigation, I am not presented with a clear cut refusal to act. Rather, plaintiffs' complaint involves a closer case; that is whether the actions taken to date by the DNA amount to a

refusal to act given the requests made by plaintiffs. For instance, it may very well be that the information already distributed by the DNA has given to atomic vets, in substance, the warning plaintiffs want, albeit without the exact words plaintiffs would choose.

Having concluded, at least initially, that the exhaustion doctrine should apply, I now address whether plaintiffs have met one of its exceptions.

In their brief plaintiffs rely on two independent exceptions to the exhaustion requirement. First, they claim judicial review is necessary to prevent irreparable harm. Secondly, they contend it would be futile to attempt exhaustion. *See Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir.1982). In *Jaffee*, the Third Circuit relied on a combination of these factors in finding "little purpose" in delaying judicial review until the plaintiffs first presented their claims to the Army. Plaintiffs in this case strenuously contend *Jaffee* is indistinguishable. However, for the reasons previously expressed, as well as those that follow, I must disagree.

■ Turning to irreparable injury, I find plaintiffs' arguments unconvincing. At the time *Jaffee* was decided, the Army had not disseminated to atomic vets warnings about the possible dangers resulting from participation in nuclear testing. As a result of *Jaffee*, however, the Defense Nuclear Agency distributed such a notice to over 15,000 newspapers, radio stations and television stations. Almost 1,700 of these media outlets confirmed publication or broadcast of the notice. Therefore, *Jaffee* involved plaintiffs seeking notice where none had been given, while this case involves plaintiffs who are dissatisfied with the notice given. Furthermore, defendants' unopposed affidavit shows the DNA is actively investigating the effects of radiation exposure and disseminating the results of such investigation to atomic vets. This in-

**534**

formation is far more detailed than any notice plaintiffs could hope to disseminate. I can perceive no basis on which plaintiffs can claim the notice they seek will prevent any harm not already prevented by the full disclosures being made by the DNA program.

■ I likewise conclude plaintiffs have failed to show it would be futile to present their request to the appropriate agency. In *Jaffee*, the futility finding reflected the Army's failure to act even though it had knowledge through its participation in the litigation, of the notice plaintiff sought. Since *Jaffee* the DNA has distributed voluminous information concerning radiation exposure and its effects. In addition the DNA is distributing information "fact sheets" as to specific nuclear testing programs. Even more importantly, defendants' unopposed affidavit indicates that all those seeking information on the genetic effects on test participants are given the "latest scientific evidence." While I recognize that the DNA is not distributing a notice containing the exact words plaintiffs desire, I am unable to conclude it would be futile for plaintiffs to present their case to the DNA.

As I have previously discussed, the DNA might immediately issue the warning plaintiffs seek if plaintiffs' scientific data is convincing or the DNA might issue the warning after its own scientific studies are complete. Plaintiffs cannot claim their efforts would be futile simply because the DNA has not issued a warning due to incomplete, inconclusive evidence. Given the possible side effects of plaintiffs' desired warning, such conduct on the part of the DNA can only be characterized as prudent. In sum, I feel the government has made a convincing showing that it is attempting to deal realistically with the problems faced by atomic vets.

For all the above reasons, I conclude plaintiffs' complaint must be dismissed for failure to exhaust administrative remedies.