**Ruth METZ and Betty Lee Metz**

v.

**UNITED STATES of America.**

**Civ. No. PN–85–4714.**

United States District Court, D. Maryland.

Nov. 3, 1989.

**1134**

Daniel L. Shea, Brault, Graham, Scott & Brault, Rockville, Md., for plaintiffs.

Sally Rider, Paul Figley, Brenda Green, and Richard Willard, Asst. Attys. Gen., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

NIEMEYER, District Judge.

This case raises the question whether coverage by the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, of a work-related injury precludes suit by the employee against the United States when the conduct of the United States giving rise to the injury is alleged to be intentional.

On June 17, 1955, while working as a federal employee at a chemical and biological testing center at Fort Detrick, Maryland, Harrison Metz was exposed to hot vapors and liquid spray from a container of *Bacillus anthracis*. This bacteria causes anthrax which is an infectious and usually fatal disease of warm-blooded animals, especially of cattle and sheep, but also of humans. Although the disease is capable of affecting various human organs, it occurs primarily as a localized skin infection. Upon returning home from work that day in 1955, Mr. Metz informed his wife Ruth that he had been accidentally sprayed in the face with a vapor, but he did not offer any further explanation. The next day his face appeared swollen, and the day thereafter he was hospitalized at Fort Detrick. Mrs. Metz was not allowed to visit her husband in his room, but she was permitted to see him through a glass window. She observed that Mr. Metz's face and neck were badly swollen. She was given no explanation of the nature of his illness by the hospital personnel. When Mr. Metz came home from the hospital in early August 1955, he told his wife that the nature of his illness was a secret and that therefore he could never tell anyone about it.

Mr. Metz thereafter developed various health problems, such as breathing difficulties, headaches, trembling, tiredness, anxiety, insomnia, and later heart complications, all of which are alleged in the complaint to have been the result of his expo-

sure to the anthrax bacteria. In later years Mr. Metz sought treatment from two private physicians, but he never informed them of his anthrax disease. In October 1984, Mr. Metz finally broke his vow of secrecy and told his wife that he had contracted "animal's disease" in the 1955 accident and that he had not previously told anyone. According to Mrs. Metz's affidavit, Mr. Metz

> advised [her] for the first time that he had been told by medical personnel at Ft. Detrick that he should *never* advise anyone as to the nature of his illness and the exposure to anthrax. To [her] knowledge Mr. Metz never informed any of his treating physicians of this fact, given his directives from the personnel at Ft. Detrick that the anthrax studies were top secret and not for disclosure or dissemination to anyone.

R. Metz Affidavit of October 13, 1986 (emphasis in original). Mr. Metz died from cardiac arrest on April 4, 1985, allegedly the result of his exposure to the anthrax bacteria some 30 years earlier.

In November of 1985, Ruth Metz, as the surviving spouse of Mr. Metz, and Betty Lee Metz, the daughter and personal representative of Mr. Metz's estate, brought a wrongful death and survival action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, alleging strict liability in tort, negligence, and grossly negligent or intentional disregard for Mr. Metz's health. The United States moved to dismiss the complaint, claiming that plaintiffs' sole remedy lay under FECA.

On March 7, 1987, United States District Judge Joseph C. Howard denied defendant's motion to dismiss but directed the plaintiffs to file an FECA claim. In addition, Judge Howard directed that "[t]he parties ... stipulate that if, during the FECA proceeding, it is determined that plaintiffs' claim of intentional infliction of emotional distress is not compensable under FECA, plaintiff may then resume her FTCA claim."

On September 15, 1988, the Department of Labor, Office of Workers' Compensation Programs, notified plaintiffs' attorney by letter that the FECA claim had been accepted as timely filed. The letter also stated that "[w]e have also accepted it as factual that Mr. Metz did contract anthrax in the performance of duty on June 17, 1955." The United States has now moved for summary judgment in this case, arguing that the Department of Labor has determined that the underlying injury, anthrax, which allegedly has given rise to all of plaintiffs' claims, is within the scope of FECA. Therefore, the United States contends that all of plaintiffs' FTCA claims, including any claim for intentional tortious conduct, are barred by FECA's exclusivity provision.

## I

Under FECA, the United States undertakes to pay its employees compensation for disability or death that results from injury sustained by the employees in the performance of their duties. 5 U.S.C. § 8102. FECA provides for medical services, vocational rehabilitation, payment for loss of income from disability, and awards to beneficiaries in the case of death. A work-related injury as covered by FECA is defined in § 8101(5) to include "a disease proximately caused by the employment."

The remedies provided by the United States under FECA are exclusive of all other remedies with respect to an injury or death. As § 8116(c) provides:

> The liability of the United States ... under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States ... to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States ... because of the injury or death in a direct judicial proceeding, in a civil action, ... or under a Federal tort liability statute.

The underlying concept of FECA compensation is analogous to that commonly found in workers' compensation acts. In exchange for the prompt payment of specified amounts, regardless of fault, the em-

ployee gives up the right to sue the United States. The reason for the exclusivity provisions of § 8116(c) is to

> protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise—the *"quid pro quo"*—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, *but in return they lose the right to sue the Government.*

*Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 193–94, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983) (emphasis added). FECA, however, is not completely analogous to workers' compensation acts because it implicates the government's sovereign immunity, whereas private employers enjoy no comparable protection. Consequently, analogies to workers' compensation laws are not completely apposite because the government, through FECA, has chosen to restrict its waiver of immunity. *See Heilman v. United States,* 731 F.2d 1104, 1111 n. 6 (3d Cir.1984).

■ The determination of whether FECA applies, i.e., whether the injury occurred in the course of employment, is made by the Secretary of Labor (or his delegate) and is not reviewable by the courts. *See, e.g., Heilman,* 731 F.2d at 1110.

In this case the Secretary of Labor, through the Office of Workers' Compensation Programs, determined that Mr. Metz's exposure to the anthrax bacteria occurred in the course of his employment and that a claim for benefits by reason of Mr. Metz's death was timely filed. That acceptance of the claim by the Secretary, however, does not resolve whether Mr. Metz's death "resulted from" the anthrax disease. *See* 5 U.S.C. § 8102. If the death of Mr. Metz did result from anthrax, then plaintiffs will be entitled to benefits provided by FECA. That determination, however, must be made by the Secretary.

The plaintiffs argue that their claim for intentional infliction of emotional distress is not compensable under FECA and that therefore its exclusivity will not bar a claim against the United States under FTCA. They rely on *DeFord v. Secretary of Labor,* 700 F.2d 281, 290–91 (6th Cir.1983); *Lawrence v. United States,* 631 F.Supp. 631, 636–37 (E.D.Pa.1982); *Newman v. Legal Services Corp.,* 628 F.Supp. 535, 543 (D.D.C.1986); and *Sullivan v. United States,* 428 F.Supp. 79, 81 (E.D.Wis.1977).

■ Each of these cases relied on by the plaintiffs, however, found that the claims which were asserted did not arise from disability or death as encompassed by FECA, and therefore they were not precluded by FECA's exclusivity provision. In *DeFord* the claim was for discrimination; in *Lawrence* the complaint sought equitable relief for an alleged First Amendment violation; in *Newman* the claim was for intentional infliction of emotional distress arising from alleged outrageous conduct in preventing plaintiffs from communicating with co-workers; in *Sullivan* the claim was again for discrimination, mental distress and wrongful discharge. Claims for discrimination, harassment, and wrongful discharge are not of the type covered either by typical workers' compensation acts or by FECA. FECA applies to disability or death arising from a work-related injury which is defined to be *personal injury* caused by accident or by disease that is proximately caused by the employment. See 5 U.S.C. §§ 8101, 8102.

The claims made in the complaint in this case, whether asserted by Mrs. Metz for the death of Mr. Metz or by Mr. Metz's estate for the emotional distress he was caused to suffer, all arise from the work-related accident that caused Mr. Metz to contract anthrax—a disease that is covered by FECA.

■ Once it is determined that disability or death resulted from a work-related injury as defined by FECA, the claimant, whether he be an employee, or a legal representative or relative of the employee, is limited to the remedies for the injury that are given by FECA. As the Supreme

Court pointed out in *Lockheed Aircraft,* in exchange for coverage by FECA, the claimants "lose the right to sue the Government." 460 U.S. at 194, 103 S.Ct. at 1036.

 Injury covered by FECA's exclusivity is not defined by whether the conduct giving rise to it was negligently, wantonly, recklessly or intentionally caused, unless it is brought about by the deliberate conduct of the employee. 5 U.S.C. § 8102. Rather, injury must be personal injury or disease that is sustained in the performance of the employee's duty. Once an injury is found to fall within the coverage of FECA, its remedies are exclusive and no other claims can be entertained by the court. *See, e.g., Heilman,* 731 F.2d at 1111 n. 6; *Burke v. United States,* 644 F.Supp. 566 (E.D.La.1986); *Dunn v. United States,* 516 F.Supp. 1373 (E.D.Pa.1981). Thus, the "exclusivity" provision applies whether the claim is for actual pecuniary losses resulting from the injury or for noneconomic losses. *See, e.g., Posegate v. United States,* 288 F.2d 11, 13–14 (9th Cir.), *cert. denied,* 368 U.S. 832, 82 S.Ct. 55, 7 L.Ed.2d 34 (1961) (FECA bars FTCA claim for impotence and loss of consortium allegedly caused by government negligence). Even if a particular type of damage or consequence is not compensable under FECA, an employee injured in the course of his employment may not sue the United States for damages under FTCA once it is determined that the injury falls within that defined to be covered by FECA.

 Because Mr. Metz's anthrax disease was an injury covered by FECA, the Court concludes that the remedies afforded by FECA are exclusive, and plaintiffs are barred from bringing a suit under FTCA.

## II

 The United States also contends, as an additional ground for its motion for summary judgment, that plaintiffs have failed to show facts to support a claim for intentional infliction of emotional distress. State law, which applies to claims under FTCA, requires that the plaintiff establish that (1) the conduct of the United States was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the intentional conduct caused emotional distress; and (4) the emotional distress was severe. *See Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977). For conduct to be "extreme and outrageous," it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 567, 380 A.2d 611, quoting Restatement (Second) of Torts § 46, comment d (1965).

The evidentiary material submitted by plaintiffs in support of their intentional tort claim consists solely of the affidavits of Ruth and Betty Metz. The only intentional conduct that can be gleaned from these affidavits is the directive to Mr. Metz by government personnel to hide his exposure to the anthrax bacteria and to maintain the secrecy of the "top secret" anthrax studies. While this conduct was intentional, its intent was to prevent the public from learning of Mr. Metz's exposure and the anthrax studies. It did not prevent him from learning of his own exposure, and it did not prevent him from getting medical treatment. Although many government activities are shielded from public scrutiny, that secrecy alone does not automatically give rise to a tort claim. Nothing in the record in the instant case tends to show that the government intended the results of the original accident or intended to cause emotional distress. Its deliberate instruction to Mr. Metz to maintain the secrecy of its work can hardly be characterized as so outrageous as to go beyond all bounds of decency.

At oral argument counsel for plaintiffs suggested that the order of secrecy could have prevented Mr. Metz from seeking or obtaining adequate medical attention. The record, however, does not support this claim. Although plaintiffs have in their possession Mr. Metz's complete medical files, no doctor is able to say that Mr. Metz would have received any different treatment over the years had his exposure to the anthrax bacteria been known. Moreover, no doctor is able to say that Mr. Metz's treatment which was given to him

by the government at the time of the accident in 1955 was anything less than competent. Indeed, plaintiffs' counsel admitted that his own expert witness would testify that Mr. Metz received adequate medical care. While counsel asserts that he needs more discovery to determine if in fact Mr. Metz did receive proper care, counsel has possession of all of Mr. Metz's medical records. From these records, plaintiffs can surely determine whether the treatment Mr. Metz received was inadequate. Yet no evidentiary material to that effect has been submitted, nor is such a contention even made at this time.

Even if counsel's hypothesis were correct that perhaps medical care could be proved to have been inadequate, that is a far cry from showing that Mr. Metz was caused to suffer "severe emotional distress" as is required to be shown to establish the tort of intentional infliction of emotional distress. *See Vance v. Vance*, 286 Md. 490, 504, 408 A.2d 728 (1979).

The record thus fails to support the presence of any facts to establish (1) outrageous intentional conduct by the United States, and (2) severe emotional distress, both of which are essential elements of the tort of intentional infliction of emotional distress. Plaintiffs cannot, at this stage of the proceedings, rely simply on their pleadings. *See Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Mr. Metz sustained an unfortunate work-related injury some 30 years ago. He was provided medical care at the time, and he apparently chose to make no further claims himself over the 30 years. If plaintiffs can show now that his death in 1985 was caused by that injury, their sole claim is under FECA. For the reasons given in this opinion the FTCA claims must be dismissed.

Accordingly, it is hereby ORDERED this 3rd day of November, 1989, by the United States District Court for the District of Maryland, that:

1. The motion of the United States for summary judgment is granted and judgment is entered in favor of the United States and against plaintiffs without prejudice to their pursuing claims under FECA for compensation that may be available to them under that act.

2. The Clerk of the Court is directed to mail a copy of this Opinion and Order to all counsel of record.